### In re ADOPTION OF Mollie Page ARMSTRONG, a Minor.

No. 5618.

Court of Civil Appeals of Texas.

El Paso.

Sept. 15, 1965.

Morgan & Boling, El Paso, for appellant.

W. O. Craft, William Duncan, El Paso, for appellee.

CLAYTON, Justice.

Under mandate of the Supreme Court of the United States issued pursuant to the ruling of that Court on Writ of Certiorari to this court in Cause No. 149, April 27, 1965, styled Armstrong, Petitioner v. Manzo, et ux., 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62, the former opinion of this court in the above styled and numbered cause (Tex.Civ.App., 371 S.W.2d 407, err. ref., n. r. e.) is withdrawn, and this opinion substituted therefor. For clarity, and to avoid any possible misinterpretation by paraphrasing the opinion of the United States Supreme Court, that opinion is hereinbelow set out verbatim, as follows:

"The petitioner, R. Wright Armstrong, Jr., and his wife were divorced by a Texas court in 1959. Custody of their only child, Molly Page Armstrong, was awarded to Mrs. Armstrong, and the petitioner was granted 'the privilege of visiting with said child at reasonable times, places, and intervals.' The divorce decree ordered the petitioner to pay $50 a month for his daughter's support. In 1960 Mrs. Armstrong married the respondent, Salvatore E. Manzo. Two years later the Manzos filed a petition for adoption in the District Court of El Paso County, Texas, seeking to make Salvatore Manzo the legal father of Molly Page Armstrong.[1]

"[1.] Mrs. Manzo joined the petition in order to manifest her consent to the adoption, and also filed a separate written consent.

"Texas law provides that an adoption such as this one shall not be permitted without the written consent of the child's natural father, except in certain specified circumstances. One such exceptional circumstance is if the father 'shall have not contributed substantially to the support of such child during [a] period of two (2) years commensurate with his financial ability.' In that event, the written consent of the judge of the juvenile court of the county of the child's residence may be accepted by the adoption court in lieu of the father's consent.[2]

"[2.] Tex.Rev.Civ.Stat.Ann., Art. 46a (6) provides in pertinent part as follows:
" 'Except as otherwise provided in this Section, no adoption shall be permitted except with the written consent of the living parents of the child; provided, however, that if a living parent or parents shall voluntarily abandon and desert a child sought to be adopted, for a period of two (2) years, and shall have left such child to the care, custody, control and management of other persons, or if such parent or parents shall have not contributed substantially to the support of such child during such period of two (2) years commensurate with his financial ability, then, in either event, it shall not be necessary to obtain the written consent of the living parent or parents in such default, and in such cases adoption shall be permit-

ted on the written consent of the Judge of the Juvenile Court of the county of such child's residence; or if there be no Juvenile Court, then on the written consent of the Judge of the County Court of the county of such child's residence.' The petitioner does not here question the constitutional validity of the substantive provisions of this statute.

"Preliminary to filing the adoption petition, Mrs. Manzo filed an affidavit in the juvenile court, alleging in conclusory terms that the petitioner had 'failed to contribute to the support of' Molly Page Armstrong 'for a period in excess of two years preceding this date.' No notice was given to the petitioner of the filing of this affidavit, although the Manzos well knew his precise whereabouts in Fort Worth, Texas. On the basis of the affidavit, and without, so far as the record shows, a hearing of any kind, the juvenile court judge promptly issued his consent to the adoption. In the adoption petition, filed later the same day, the Manzos alleged that 'consent of the natural father, R. W. Armstrong, Jr., to the adoption herein sought is not necessary upon grounds that the said father has not contributed to the support of said minor child commensurate with his ability to do so for a period in excess of two (2) years, and the Judge of a Juvenile Court of El Paso County, Texas * * * has consented in writing to said adoption.' No notice of any kind was given to the petitioner of the filing or pendency of this adoption petition.

"An investigator appointed by the court made a detailed written report recommending the adoption, and a few weeks later the adoption decree was entered. The decree provided in accord with Texas law that 'all legal relationship and all rights and duties between such Child and the natural father shall cease and determine, and such Child is hereafter deemed and held to be for every purpose the child of its parent by adoption. as fully as though naturally born to him in lawful wedlock,'[3] and further provided that 'the

"3. 6 Tex.Rev.Civ.Stat.Ann., Art. 46a (9).

said Molly Page Armstrong shall be known by the Christian and surname as Molly Page Manzo, from this day forward.'

"During this entire period the petitioner was not given, and did not have, the slightest inkling of the pendency of these adoption proceedings. On the day the decree was entered, however, Salvatore Manzo wrote to the petitioner's father, advising him that 'I have this date completed court action to adopt Molly Page as my daughter and to change her name to Molly Page Manzo.' The petitioner's father immediately relayed this news to the petitioner, who promptly filed a motion in the District Court of El Paso County, asking that the adoption decree 'be set aside and annulled and a new trial granted,' upon the ground that he had been given no notice of the adoption proceedings.[4]

"4. The third paragraph of the petitioner's motion was as follows:

"'At the time the above entitled and number proceeding came on to be heard and judgment rendered, your Petitioner had never been advised or given notice, actual or constructive, as required by the laws of Texas, that this proceeding was to be heard or that it was even pending or of the judgment herein until after the rendition of the judgment, nor was any attempt made to notify Petitioner in any way of this proceeding although his address and whereabouts were well known to the parties, in fact the parties to this proceeding deliberately and wrongfully withheld all notice from Petitioner for the expressed purpose of denying him any opportunity to appear, contest and present his defenses to this proceeding; and that Petitioner was prevented from appearing and presenting his defenses not by his own fault or negligence but rather by the deliberate and wrongful acts of the parties to this proceeding.'

The prayer of the motion was as follows:

'Wherefore, Petitioner prays that the judgment and decree entered in this

proceeding be in all things vacated, set aside and annulled and a new trial granted.'

"The court did not vacate the adoption decree, but set a date for hearing on the motion. At that hearing the petitioner introduced evidence, through witnesses and by depositions, in an effort to show that he had not failed to contribute to his daughter's support 'commensurate with his financial ability.' [5] At the con-

"5. See note 2, supra.

clusion of the hearing the court entered an order denying the petitioner's motion and providing that the 'adoption decree entered herein is in all things confirmed.'

"The petitioner appealed to the appropriate Texas court of civil appeals, upon the ground, among others, that the trial court had erred in not setting aside the adoption decree, because the entry of the decree without notice to the petitioner had deprived him 'of his child without due process of law.' The appellate court affirmed the trial court's judgment,[6] and the Supreme Court of Texas

"6. 371 S.W.2d 407.

refused an application for writ of error.

"We granted certiorari. 379 U.S. 816, [85 S.Ct. 46, 13 L.Ed.2d 26.] The questions before us are whether failure to notify the petitioner of the pendency of the adoption proceedings deprived him of due process of law so as to render the adoption decree constitutionally invalid, and, if so, whether the subsequent hearing on the petitioner's motion to set aside the decree served to cure its constitutional invalidity.

"In disposing of the first issue, there is no occasion to linger long. It is clear that failure to give the petitioner notice of the pending adoption proceedings violated the most rudimentary demands of due process of law. 'Many controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation

of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case.' Mullane v. Central Hanover Bank & Tr. Co., 339 U.S. 306, at 313 [70 S.Ct. 652, at 656, 94 L.Ed. 865]. 'An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. Milliken v. Meyer, 311 U.S. 457 [61 S.Ct. 339, 85 L.Ed. 278]; Grannis v. Ordean, 234 U.S. 385 [34 S.Ct. 779, 58 L.Ed. 1363]; Priest v. Town of Las Vegas, 232 U.S. 604 [34 S.Ct. 443, 58 L.Ed. 751]; Roller v. Holly, 176 U.S. 398 [20 S.Ct. 410, 44 L.Ed. 52].' Id., at 314 [70 S.Ct. at 657]. Questions frequently arise as to the adequacy of a particular form of notice in a particular case. See, e. g., Schroeder v. City of New York, 371 U.S. 208 [83 S.Ct. 279, 9 L.Ed.2d 255]; New York v. New York, N. H. & H. R. Co., 344 U.S. 293 [73 S.Ct. 299, 97 L.Ed. 333]; Walker v. Hutchinson City, 352 U.S. 112 [77 S.Ct. 200, 1 L.Ed.2d 178]; Mullane v. Central Hanover Bank & Tr. Co., supra. But as to the basic requirement of notice itself there can be no doubt, where, as here, the result of the judicial proceeding was permanently to deprive a legitimate parent of all that parenthood implies. Cf. May v. Anderson, 345 U.S. 528, 53 [73 S.Ct. 840, 843, 97 L. Ed. 1221].

"The Texas Court of Civil Appeals implicitly recognized this constitutional rule, but held in accord with its understanding of the Texas precedents,[7] that

"7. See Lee v. Purvin, [Tex.Civ. App.,] 285 S.W.2d 405; Dendy v. Wilson, 142 Tex. 460, 179 S.W.2d 269, [151 A.L.R. 1217]; DeWitt v. Brooks, 143 Tex. 122, 182 S.W.2d 687; Johnston v. Chapman, [Tex.Civ.App.] 279 S.W.2d 597.

whatever constitutional infirmity resulted from the failure to give the petitioner

notice had been cured by the hearing subsequently afforded to him upon his motion to set aside the decree. 371 S.W.2d at 412. We cannot agree.

 "Had the petitioner been given the timely notice which the Constitution requires, the Manzos, as the moving parties, would have had the burden of proving their case as against whatever defenses the petitioner might have interposed. See Jones v. Willson, [Tex.Civ.App.], 285 S.W.2d 877; Ex parte Payne, [Tex.Civ.App.], 301 S.W.2d 194. It would have been incumbent upon them to show not only that Salvatore Manzo met all the requisites of an adoptive parent under Texas law, but also to prove why the petitioner's consent to the adoption was not required. Had neither side offered any evidence, those who initiated the adoption proceedings could not have prevailed.

"Instead, the petitioner was faced on his first appearance in the courtroom with the task of overcoming an adverse decree entered by one judge, based upon a finding of nonsupport made by another judge. As the record shows, there was placed upon the petitioner the burden of affirmatively showing that he had contributed to the support of his daughter to the limit of his financial ability over the period involved. The burdens thus placed upon the petitioner were real, not purely theoretical. For 'it is plain that where the burden of proof lies may be decisive of the outcome.' Speiser v. Randall, 357 U.S. 513, 525, [78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460]. Yet these burdens would not have been imposed upon him had he been given timely notice in accord with the Constitution.

"A fundamental requirement of due process is 'the opportunity to be heard.' Grannis v. Ordean, 234 U.S. 385, 394 [34 S.Ct. 779, 783, 58 L.Ed. 1363]. It is an opportunity which must be granted at a meaningful time and in a meaningful manner. The trial court could have fully accorded this right to the petitioner only by granting his motion to set aside the decree and consider the case anew. Only that would have wiped the slate clean. Only that would have restored the petitioner to the position he would have occupied had due process of law been accorded to him in the first place. His motion should have been granted.

"For the reasons stated, the judgment is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

"It is so ordered."

We adopt the foregoing as the opinion of this court and, in accordance therewith, the judgment of the trial court in this cause is reversed and the cause remanded for a new trial after notice in conformity with the opinion of the United States Supreme Court as above set out.