No. 22065.

KENNETH Q. WHITE *v.* W. BANCROFT DAVIS.
(428 P.2d 909)

Decided June 19, 1967.

NEEF, SWANSON and MYER, for plaintiff in error.

W. BANCROFT DAVIS, SHERMAN E. WALROD, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE HODGES.

THE plaintiff in error, Kenneth Q. White, filed in the lower court his Motion to Vacate Decrees of Adoption of his three minor children by W. Bancroft Davis, who after divorce between White and Rae Anne White, had married White's former wife, mother of the children. Davis challenged this motion by moving to strike it on the ground that White's attempt to vacate the decrees of adoption was barred by C.R.S. 1963, 4-1-16 quoted as follows:
"Limitation on annulment of adoption. — No attempt to invalidate a final decree of adoption by reason of any

jurisdictional or procedural defect shall be received by the court, or by any court of this state, unless regularly filed with such court within two years following the entry of the final decree."

The lower court granted Davis' motion to strike White's motion to vacate the decrees of adoption and denied a motion for rehearing. The resultant effect was therefore a denial of an evidentiary hearing on White's motion to vacate the adoption decrees.

By this writ of error, White claims the court erroneously applied the limitations of C.R.S. 1963, 4-1-16, *supra*, to these adoption decrees, which White alleges are void since he, as the natural father, had no notice of the pendency of the adoption proceeding, and that his whereabouts, although known to Davis and the natural mother, Rae Anne Davis, formerly Rae Anne White, were concealed from the adoption court.

For an adequate consideration of the issues on this writ of error, a brief description of the proceedings predating the final decrees of adoption is set forth as follows:

On August 13, 1958, Davis filed Petitions for Adoption of the three children in the County Court of Sedgwick County. Consent to the adoption of each child by the natural mother is evidenced in the record as of August 14, 1958. Final decrees of adoption were filed and signed by the court on August 20, 1958. More than a year later, on November 3, 1959, an order was entered by the court vacating these final adoption decrees. On the same day, Davis on the basis of his previous petitions of adoption, filed a request that Kenneth Q. White, the natural father, be served by publication. In the request for authority to obtain service by publication, it was stated that the last known address of White is unknown to the petitioner or to the mother of the children. Service by publication was ordered and proof of publication was filed December 28, 1959 and thereafter on January 6, 1960 final decrees of adoption were entered by the court.

On March 5, 1965, White obtained an order from the lower court for the inspection of files and records pertaining to the adoption proceedings and thereafter filed his motion to vacate these decrees of adoption alleging inter alia: that it was not until after the death in December 1964 of the natural mother, Rae Anne Davis, that he learned of the adoption proceeding; that he did not then consent nor has he ever consented to said adoptions; that he did not receive sufficient notice or any notice of the adoption proceedings; that he had no opportunity to appear in said matter and contest the same; that at the time said decrees were entered, the petitioner and the natural mother were well aware of his residence in California; and that the order of publication of service was wrongfully procured and improvidently entered. The record before us contains many extraneous matters of which we take special notice but upon which we do not choose to comment here due to their nonessential character in determining the issue involved in this writ of error.

The propriety of the application of C.R.S. 1963, 4-1-16, as a bar to an evidentiary hearing on White's motion to vacate the decrees of adoption constitutes the main issue we must concern ourselves with in this opinion.

■ ■ It is elementary that the requirements of due process of law under both the United States and Colorado Constitutions take precedence over statutory enactments of our legislature. This, of necessity, includes any bar to inquiry as may be provided in the statute, to those essential elements of due process including proper notice and an opportunity to be heard. C.R.S. 1963, 4-1-16 does not go so far and must not be interpreted in such a manner as to bar inquiry into questions raised involving due process. This statute on the other hand clearly serves the beneficial purpose of curing such defects which are technical and do not affect the basic rights of the parties. The statute further serves the purpose of guaranteeing to adopting parents the undisturbed re-

lationship with the child, which was one of its legislative intents.

For the purpose of determining on review whether the lower court should have denied the Davis motion to strike the White motion to vacate, we must here take as admitted the allegations in the White motion to vacate the adoption decrees. See *Martinez v. Ute Tribe*, 150 Colo. 504, 374 P.2d 691, involving a motion to dismiss. In our view, two specific allegations in White's motion to vacate the adoption decrees are concerned with meeting the due process requirements, to-wit: insufficiency of notice or no notice, and the wrongful procurement from the lower court of the order of publication of service.

The United States Supreme Court in *Armstrong v. Manzo*, 380 U.S. 545, 14 L.Ed.2d 62, 85 S.Ct. 1187 recently set forth some basic requirements concerning due process of law in adoption proceedings. In that case the court reversed and remanded to a Texas court an adoption matter on the grounds that the failure to give a divorced father notice of the pendency of proceedings for the adoption of his child deprives him of due process of law.

Although in the instant case the record reveals service by publication, the adequacy or sufficiency of such notice was strongly challenged by White's motion to vacate and therefore constituted a proper matter for evidentiary hearing by the lower court to determine whether the due process requirements in the adoption proceedings were met. Where the motion to vacate the adoption decrees claims no notice whatsoever and further alleges that in support of an order authorizing service by publication the procurer of the order made a false representation he was unaware of the whereabouts of the natural father, it would seem that the inherent seriousness of such allegations would make it patently clear that an evidentiary hearing would be required. If these allegations are substantiated, the lower

court would have no alternative but to declare the adoption decrees void.

The ruling of the lower court is reversed and this cause is remanded for a hearing on White's motion to vacate the adoption decrees.

Judgment reversed and cause remanded with directions.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE SUTTON and MR. JUSTICE PRINGLE concur.