OPINION
This case is before this court following the granting of a motion for reconsideration filed by appellant, George Petro.[1] As a result, we now return to the merits of this underlying appeal.
Appellee, the city of Painesville Building Department, filed fifteen charges of housing code, zoning and property maintenance violations of the Painesville Codified Ordinances, Section 1367, in April 1999 against appellant, George Petro, in trial court case number 99 CRB 607. It also filed charges of a housing code violation, two zoning violations of Sections 1137 of the Painesville Codified Ordinances, and four property maintenance violations of Section 1349 in trial court case number 99 CRB 609. The 1349 charges were minor misdemeanors while the balance of the charges were fourth degree misdemeanors.
Lake App. No. 99-L-182. After continuances at appellant's request on August 9, 1999, nine counts in 99 CRB 607 were dismissed, and appellant pled guilty to six counts. Thereupon, the court sentenced appellant to one hundred eighty days in jail, suspending one hundred twenty days of the jail sentence, and placed him on probation for twelve months. The court ordered that the remaining sixty days of the jail sentence would commence on October 1, 1999, but could be avoided if appellant completed repairs and continued to comply with the code. Additionally, the court ordered appellant to pay a fine in the amount of $200, plus costs.
Lake App. No. 99-L-181. On August 9, 1999, three counts were dismissed, and appellant pled guilty to six counts in case number 99 CRB 609. Thereupon, the court sentenced appellant to one hundred fifty days in jail, suspended ninety days, and placed him on probation for twelve months. As in the other case, the jail sentence was set to begin on October 1, 1999, and could be avoided if appellant brought the property into compliance by that date. A fine of $50, plus costs, was also imposed upon appellant.
On October 1, 1999, appellant filed a motion to stay execution of the jail sentence, which the court summarily denied. Then, on October 6, 1999, appellant filed a motion for work release which was granted, and appellant was released from jail between 10:00 a.m. and 2:00 p.m. Monday through Friday. On October 15, 1999, appellant filed a motion to enlarge work release time. The court granted the motion on October 21, 1999, and scheduled a review hearing in seven days "to see if corrections are being made on property." On October 22, 1999, the court, on its own motion, issued a warrant to discharge appellant, and he was released from jail.
On October 28, 1999, appellant appeared, with counsel, at the direction of the court to consider the court's motion for modification. The court determined, by judgment filed October 29, 1999, that none of the violations had been cured or corrected and ordered that the appellant be remanded to jail to serve the balance of the sentence. In addition, the court imposed a fine upon appellant in the amount of $200 per day in case number 99 CRB 607 and $50 per day in 99 CRB 609 until appellant complied with the applicable housing, zoning and fire codes.
On November 5, 1999, the court released appellant from jail and scheduled another review hearing for November 18, 1999. At that time, the court continued the hearing for one month.
Prior to the date of the continued hearing, the appellant filed the instant notice of appeal in each of the cases. The notices of appeal are directed at the October 29, 1999 judgment entry. Accordingly, appellant presents the following assignments of error for our review:
 "[1.] The trial court erred to the prejudice of the Appellant by denying him due process of law in modifying the defendant's sentence without having any factual or evidentiary basis for the modification.
 "[2.] The trial court erred to the prejudice of Defendant-Appellant by increasing the sentence of the defendant after the original sentence had been imposed, thus, violating the double jeopardy clause of the Fifth Amendment to the United States Constitution and Section 10, Article 1 of the Ohio Constitution."
 Essentially, appellant claims under the first assignment of error that he was denied procedural due process because he was not afforded the opportunity to present evidence in his own defense or cross examine witnesses during the hearing. To support his position, appellant alleges that the trial court did not even permit his counsel to address the court.
Generally, the overall goal of procedural due process under theFourteenth Amendment to the United States Constitution and Section 15, Article I of the Ohio Constitution is to provide the parties with a reasonable opportunity to be heard before a competent tribunal.[2]Fuentes v. Shevin (1972), 407 U.S. 67, 80; State v. Edwards (1952),157 Ohio St. 175, paragraph one of the syllabus; State v. Lee (Sept. 11, 1998), Lake App. No. 97-L-091, unreported, at 4, 1998 WL 637583. "The fundamental requirement of due process is the opportunity to be heard `at a meaningful time and in a meaningful manner.'" Mathews v. Eldridge
(1976), 424 U.S. 319, 333, quoting Armstrong v. Manzo (1965), 380 U.S. 545,552. See, also, Lee at 4. Thus, at a minimum, due process of law requires that when a court conducts a hearing, it give the parties a reasonable opportunity to be heard.
In the instant matter, the trial court granted appellant's motion for work release and motion to enlarge work release time. However, in doing so, the trial court also scheduled a review hearing to determine whether repairs had been made to the property.[3] At this hearing, the probation officer and the building inspector were present, while appellant appeared with counsel.
A review of the six page transcript of the hearing reveals that the trial court proceeded to vent its anger towards appellant, which was apparently fueled by his alleged failure to perform repairs on the property in question. However, the trial court never provided appellee or appellant with a reasonable opportunity to be heard. For instance, the trial court did not give appellee a chance to offer evidence tending to show that appellant did, in fact, fail to make repairs on the property. Instead, for reasons that are not reflected in the record, the trial court was under the impression that appellant was not improving the conditions of the property while on work release.
Further, the trial court failed to provide appellant with an opportunity to speak up in his own defense. A review of the transcript reveals that the opportunity to be heard was nonexistent.[4] This cannot be said to comply with the due process requirements as contemplated by the United States or Ohio Constitutions. By failing to provide appellant the opportunity to be heard, the trial court failed to satisfy even the minimum requirements of due process. Accordingly, appellant's first assignment of error has merit.[5]
Under the second assignment of error, appellant maintains that the trial court violated the double jeopardy clause by imposing an additional sentence upon him subsequent to his initial sentencing.
In light of our holding in the first assignment of error that the trial court denied appellant's right to procedural due process when it conducted the hearing, the subsequent judgment entry issued by the court ordering appellant to serve the remainder of his sentence and also pay certain fines until compliance was achieved is vacated. Thus, the second assignment of error is rendered moot.
Based on the foregoing analysis, the judgment of the trial court is reversed, and the matter is remanded for proceedings consistent with this opinion and law.
JUDGE JOHN R. MILLIGAN, Ret., Fifth Appellate District, sitting by assignment.
CHRISTLEY, P.J., O'NEILL, J., concur.
[1] This court granted the motion for reconsideration on the basis that a transcript of testimony was, in fact, filed with this court.
[2] The due process clause under both the United States and Ohio Constitutions are identical.
[3] As an aside, we note that R.C. 5147.28 provides a method by which the courts of common pleas and municipal courts may create a work release program. Specifically, R.C. 5147.28(C) requires approval of the sentencing judge before work release is to be permitted. If it is believed that a prisoner has violated the conditions of work release, then the work release privileges may be temporarily suspended pending the outcome of a hearing. R.C. 5147.28(F). After receiving notice of the alleged violation, the sentencing judge is required to "hold a hearing to determine whether the prisoner violated the conditions of work-release * * *." R.C. 5147.28(F). While the statute fails to specifically set forth what is to occur during this hearing, it is axiomatic that such a hearing must comport with the minimum standards of due process, to-wit: an opportunity to be heard.
[4] The following exchange transpired during the October 28, 1999 hearing:
"The Bailiff: All Right. Mr. Petro [appellant].
 "The Judge: Okay. We're here on the Court's own motion to see what's going on here. I called this hearing today. Now, I just have a couple questions.
 "One, why hasn't anything been done when he's [appellant] been on work release? I let him out [on] work release to start the repairs. There hasn't been anything done.
 "Mr. Wagner [attorney for appellant]: Well, Your Honor, —
 "The Judge: I don't want to hear any bullshit excuses, because I'm going to put his ass right back in jail today. I am so pissed. Why can't this place be condemned, this entire apartment complex?
 "Ms. Silvertsen [the building inspector]: I don't have any interior complaints. I only have interior complaints sporadically.
 "The Judge: Well, you know, you guys keep running back here to me and there are fire code violations. Somebody could die in a fire over there.
 "Why can't we just condemn this place? Get everybody out of the apartment, keep him in jail and I'm going to make him pay for his jail. I'm going to put a lien against the property.
 "I'm sick and tired of this. People's lives are in jeopardy here.
"Mr. Wagner: Your Honor, there is —
 "The Judge: There hasn't been anything done. That — that pool — the goddamn pool is still open. People are going to fall in it. All you have to do is get some dirt over there and fill it in. How hard is that, Mr. Petro?
"The Defendant: I expect to get licensed.
 "The Judge: You know, you've been expecting a lot of things. And we've put up with a lot of things around here and I am sick and tried of it.
 "Ms. Silvertsen: Well, Your Honor, he has not called the Health Department back. No one was at the Health Department that day. The pool — the line is still broken and —
 "The Judge: It's a pigpen. It's an absolute pigpen. People live better in Appalachia than they live in those apartments. And you take their money — like a common thief and that's crap.
 "So you're going back to jail. You're going to stay there and you're going to pay for it. Meanwhile, I want everything done within your power and your power to condemn the place. Understood?
"Ms. Silvertsen: Yes, sir.
 "The Judge: Return to jail and finish your jail sentence.
"The Defendant: All right.
 "The Judge: I'll do an entry on this and you're paying for it."
[5] While we understand that the trial court may have felt frustrated in dealing with this case, it was, nevertheless, inappropriate and unprofessional for the court to have used the language it did while conducting this hearing.