240 P.3d 547 (2010)
In re the Petition of J.M.A., and
Concerning E.B.R.A., a Child, and
J.L.S., Jr., Respondent-Appellant, and
Concerning G.C. and A.C., Appellees.
No. 09CA2620.
Colorado Court of Appeals, Div. I.
June 10, 2010.
*548 Kaczmarek Law Firm, LLC, Bridgette D. Kaczmarek, Colorado Springs, Colorado, for Respondent-Appellant.
Beltz & West, P.C., W. Thomas Beltz, Daniel A. West, Colorado Springs, Colorado, for Appellees.
Opinion by Judge J. JONES.
J.L.S., Jr. (father), a possible father of E.B.R.A., appeals from the order denying his C.R.C.P. 60(b) motion for relief from the March 25, 2009, order terminating his parental rights after the child's birth mother, J.M.A., relinquished custody of the child pursuant to section 19-5-103.5, C.R.S.2009. We conclude that the district court erred in determining that the ninety-day limitations period set forth in section 19-5-105(4), C.R.S. 2009, left it without discretion to consider father's argument that he was deprived of due process because mother's failure to disclose his identity resulted in the termination of his parental rights without his knowledge. Accordingly, we reverse the judgment and remand the case to the district court for a hearing on the merits of father's motion.

I. Facts
Because no evidentiary hearing was conducted by the district court, and no factual findings were made, the facts in the record are limited. For the purpose of determining on review whether the district court should have denied father's motion for relief under Rule 60(b), we rely on father's allegations in his verified motion and on statements made in the response filed by Bethany Christian Services of Colorado (Bethany), the agency which assisted J.M.A. in placing the child for adoption.
Father alleges that after mother became pregnant, he attended prenatal appointments and ultrasounds with her. However, she ceased all contact with him months before the child was born on March 12, 2009. Unbeknownst to father, before the birth she had retained the services of Bethany to assist her in placing the child for adoption. She represented to the Bethany caseworker and in court documents that she did not know the identity of the father. Bethany stated that notice of the relinquishment and termination proceeding was given to the unknown father by publication in a newspaper in El Paso County in January 2009. When no one replied to the publication, the court terminated father's parental rights and granted Bethany *549 legal custody and guardianship of the child and authority to place him for adoption. Bethany placed the child with a prospective adoptive family in March 2009.
Father learned the child had been born and attempted to contact mother, but mother refused to speak with him. He filed a paternity action in El Paso County District Court on October 2, 2009, and served mother on October 13, 2009. On October 15, Bethany contacted father's counsel to advise father that his parental rights had been terminated in a proceeding in Clear Creek County and that an adoption proceeding was set for October 19, 2009, in Arapahoe County District Court. Father stated that he had no knowledge of either the Clear Creek County proceeding or the Arapahoe County proceeding before October 15.
On October 16, 2009, father filed his motion under Rule 60(b) seeking relief from the Clear Creek County judgment terminating his parental rights. As grounds for such relief, he argued that his right to due process was violated when mother intentionally and fraudulently omitted his name from court documents, thus depriving him of actual notice of the proceedings and preventing him from disputing the termination of his parental rights. In its response to father's motion, Bethany stated that it did not dispute mother had perpetrated a fraud, indicating that after receiving notice of father's paternity action, mother admitted that she had had a relationship with father and she believed that he was the biological father of the child. She told Bethany that she had not disclosed his name previously out of fear for her own safety and that of the baby.
On November 2, the court denied father's motion for relief, citing section 19-5-105(4), which provides, in relevant part:
Upon an allegation of fraud, the termination order cannot be questioned by any person, in any manner or upon any ground, after the expiration of ninety days from the date that the order was entered.
The court noted that the termination order had been entered on March 25, 2009, and that father's motion for relief was filed on October 16, 2009, more than ninety days after the termination order was entered. The court concluded, as a matter of law, that it had no discretion in the matter.
Father now appeals from the order denying his motion for relief. He is opposed in this appeal by G.C. and A.C. (interested parties), the current custodians of E.B.R.A. and intervenors in the district court proceeding.

II. Section 19-5-105(4) and Due Process
Father contends that he was denied due process when the district court declined to consider his request for relief from the termination of his parental rights. He maintains that service by publication was inadequate to afford him due process and that the court erred in determining that the ninety-day limitations period set forth in section 19-5-105(4) barred his request for relief. To the extent that father contends that section 19-5-105(4) is unconstitutional on its face, we conclude that we need not consider his argument because he did not make it in the district court and because he did not comply with C.A.R. 44(a), which requires that a party give notice to the supreme court if the party challenges the facial constitutionality of a statute in a case in which the state is not a party. See People in Interest of V.W., 958 P.2d 1132, 1134 (Colo.App.1998) (an issue not raised in the district court will not be considered on appeal); Cuny v. Vail Assocs., Inc., 902 P.2d 881, 883 (Colo.App.1995) (argument that a statute violates the constitution is not properly before the appellate court where the plaintiff neither complied with C.R.C.P. 57(j) in the district court nor with C.A.R. 44(a) on appeal). However, we may consider his contention that applying the ninety-day limitations period set forth in section 19-5-105(4) unconstitutionally deprived him of due process in the circumstances of this case. We construe father's argument to include that contention, and we agree with his argument as so construed.
Because a parent has a fundamental right to the companionship, care, custody, and management of his or her child, a parent's rights must be protected with fundamentally fair procedures when a permanent termination of parental rights is sought. L.L. v. People, 10 P.3d 1271, 1275-76 (Colo. *550 2000). Thus, when termination is sought, due process requires that the parent be provided with adequate notice of the termination hearing and an opportunity to protect his or her interests at the hearing itself. People in Interest of M.M., 726 P.2d 1108, 1115 (Colo. 1986).
To ensure that proper notice is given when one parent relinquishes or proposes to relinquish or consent to the adoption of a child, the court is required to "cause inquiry to be made" to identify the other parent so that notice of the proceeding may be given to the other parent or, if more than one person is identified as a possible parent, to each such person. § 19-5-105(2), (3), C.R.S.2009; see also § 19-5-103.7(1), C.R.S.2009 (providing that in an expedited relinquishment proceeding involving a child under one year of age, notice must be given to any possible birth parent identified pursuant to § 19-5-105(2)).[1] If no person is identified as the other parent, the court may order that notice be provided to all possible parents by publication or public posting of the notice. § 19-5-105(5). If a parent of a child under one year of age chooses to pursue expedited relinquishment of the child, a licensed child placement agency assisting the parent may provide the notice required. Though such notice may be given by publication in a newspaper of general circulation in the county of the other parent's last known address, or in the county in which conception occurred, such notice is proper only if the other parent or possible parent has not been identified or if his location has not been determined after diligent efforts. Otherwise, notice is to be given by personal delivery or certified mail, return receipt requested. § 19-5-103.7(3).
No Colorado appellate court has yet considered whether the ninety-day time limit set forth in section 19-5-105(4) may be applied to bar a challenge to an order terminating parental rights when, as here, a parent or possible parent seeking to challenge the order alleges that he did not receive actual notice of the termination proceeding because the parent relinquishing the child concealed his identity and caused notice to be given by publication rather than by methods more likely to achieve actual notice. However, in White v. Davis, 163 Colo. 122, 428 P.2d 909 (1967), the Colorado Supreme Court concluded in similar circumstances that an analogous statute, Ch. 106, sec. 16, § 4-1-16, 1949 Colo. Sess. Laws 211-12 (now codified as amended at § 19-5-214(1), C.R.S.2009), should not be construed to bar as untimely a motion to vacate final decrees of adoption filed several years after the expiration of the two-year limitations period set forth in the statute.
In White, a stepfather seeking to adopt his wife's children requested that notice of the adoption proceedings be provided to the children's natural father by publication. As grounds for this request, the stepfather alleged that the natural father's address was unknown to him or to the children's mother. Service by publication was ordered and the final decrees of adoption were entered in January 1960. More than five years later, the children's natural father moved to vacate the decrees, alleging that he had not learned of the adoptions until after the death of the children's mother in December 1964, that he had never consented to the adoptions, and that although the children's mother and stepfather were well aware of his residence in California, he had not received any notice of the adoption proceedings. He maintained that the order permitting service to be made by publication was wrongfully procured and improvidently entered. White, 163 Colo. at 123-25, 428 P.2d at 909-10.
The stepfather moved to strike the natural father's motion to vacate the adoption decrees on the ground that the motion was barred by the two-year limitation set forth in the statute. The district court granted the motion to strike, but the Supreme Court concluded that the district court erred, stating:
It is elementary that the requirements of due process of law under both the United States and Colorado Constitutions take precedence over statutory enactments of our legislature. This, of necessity, includes any bar to inquiry as may be provided in the statute, to those essential elements of due process including proper *551 notice and an opportunity to be heard. [Section] 4-1-16 does not go so far and must not be interpreted in such a manner as to bar inquiry into questions raised involving due process. This statute on the other hand clearly serves the beneficial purpose of curing such defects which are technical and do not affect the basic rights of the parties.
Id. at 125, 428 P.2d at 910-11. The court noted that two allegations in the natural father's motion implicated due process concerns: the allegation that notice was insufficient or not provided, and the allegation that the order of publication of service had been wrongfully procured from the district court. Id. Observing that service had been made by publication and that the motion to vacate the adoption decrees strongly challenged the adequacy and sufficiency of such service, the court concluded that this constituted a proper matter for an evidentiary hearing to determine whether the due process requirements in the adoption proceedings had been met. The court reversed the district court's ruling and remanded the case to the district court for a hearing on that issue. Id. at 126-27, 428 P.2d at 911.
We conclude that the reasoning of White applies to section 19-5-105(4), and therefore the statute should not be interpreted so as to bar a due process challenge to the termination of a parent's rights when, as here, the parent alleges a lack of notice or insufficient notice of the proceedings resulting from the other parent's failure or refusal to identify him as a possible parent.[2] Accordingly, we conclude that the district court erred when it determined that it had no discretion to consider whether father was denied due process when mother allegedly wrongfully procured an order for service by publication by failing to identify him as the child's father.
Our conclusion is consistent with the holding of Armstrong v. Manzo, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965), in which the United States Supreme Court held that an adoption decree should have been set aside, and a new trial should have been granted, after a stepfather was permitted to adopt a child despite the failure of the stepfather and the child's mother to give notice to the child's natural father, whose precise location was well known to them. The Court declared that the failure to give notice of the pending adoption proceeding to the natural father "violated the most rudimentary demands of due process of law." 380 U.S. at 550, 85 S.Ct. 1187.
Our conclusion is also consistent with the decisions of courts in several other states. See, e.g., In re Adoption of D.C., 887 N.E.2d 950, 957-60 (Ind.Ct.App.2008) (where the trial court determined that a diligent search by father and adoptive mother would have uncovered biological mother's actual address, service by publication did not comport with due process and the adoption proceedings terminating her parental rights were void; thus, a statute that would bar her challenge to the adoption decree as untimely should be interpreted in a way that would not bar her challenge in order to avoid creating a constitutional due process violation); Adoption of Hugh, 35 Mass.App.Ct. 346, 619 N.E.2d 979, 980-82 (1993) (where the department of social services failed to make adequate efforts to locate the biological father, the requirements of due process were not met when the department used service by publication to provide notice of petitions to dispense with father's consent to the adoption of his children; thus, the court had the power, under that state's Rule 60(b)(6), to reopen the judgment); In re Adoption of Knipper, 30 Ohio App.3d 214, 507 N.E.2d 436, 438 (1986) (where adoptive parents failed to use reasonable diligence to discover biological mother's address, their attempt to use constructive notice was "flawed" and the Ohio law prohibiting all direct and collateral attacks on a decree of adoption after one year was unconstitutional, and therefore ineffective, as applied to the case).
We reject the interested parties' argument that father was not entitled to notice because he is allegedly a "putative father" *552 rather than a "presumed father," he did not file a paternity action more promptly, or, in their view, he did not establish that he is willing to assume parental responsibility for the child. As the interested parties note, some states have established special requirements that must be met in order to establish a right to receive notice of a pending adoption proceeding or a right to participate in it, and such requirements have been held to be constitutional. See Lehr v. Robertson, 463 U.S. 248, 262-65, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983) (failure to give putative father notice of pending adoption proceedings did not deny him due process where he could have guaranteed that he would receive notice by sending a postcard to the putative father registry, and the state could require him to demonstrate a commitment to parenting before granting him a right to be heard in the adoption proceeding).
However, Colorado does not impose preconditions on a parent's right to be given notice of a proceeding in which his or her parental rights may be terminated. Rather, Colorado law requires that "all possible parents" be given notice of a termination proceeding and an opportunity to participate in it. See § 19-5-105(5). Even in an expedited relinquishment proceeding, all possible parents are entitled to initial notice of the proceedings, although they may be denied further notice if they fail to respond to the initial notice as provided in section 19-5-103.7(5), C.R.S.2009. See § 19-5-103.7(6). We conclude that nothing that father did or did not do deprived him of the right to be given notice that mother had initiated a proceeding in which his parental rights could be terminated.
Because we have determined that the district court erred in concluding that section 19-5-105(4) barred father's due process challenge to the order terminating his parental rights, we need not consider father's additional contentions.
The judgment is reversed, and the case is remanded to the district court for a hearing on father's motion for relief from the order terminating his parental rights. The court should determine first whether father's right to due process was violated. If the court determines that it was not, the order terminating his parental rights may stand. But if the court determines that it was, the court must then determine whether father is entitled to relief from the termination order under Rule 60(b).
Judge RICHMAN concurs.
Judge TAUBMAN specially concurs.
Judge TAUBMAN specially concurring.
I agree with the majority's opinion, but I write separately to explain why I believe the facts of this case demonstrate a miscarriage of justice beyond that discussed by the majority.
Sixty years ago, the United States Supreme Court held that procedural due process requires, among other things, "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950).
The facts of this case, in many ways, show that father was provided the antithesis of procedural due process. First, it was filed in Clear Creek County, pursuant to section 19-5-102, C.R.S.2009, because Bethany Christian Services of Colorado (Bethany), the child placement agency, asserts that it has an office in Idaho Springs. However, father alleges, without contradiction, that both he and mother have resided in Colorado Springs (El Paso County), and that neither has ever resided in Clear Creek County. Accordingly, it is peculiar that Bethany elected not to file this expedited relinquishment proceeding in El Paso County, where it also maintains an office.
Second, service was effected on father on January 26, 2009, by publication, more than a month and a half prior to E.B.R.A.'s birth on March 12, 2009. Such service by publication was nominally in accord with section 19-5-103.7(2), C.R.S.2009, which permits a child placement agency to give notice of an anticipated expedited relinquishment proceeding prior to the filing of a petition with the court, *553 as long as it is done not more than sixty days before the anticipated birth of the child to be relinquished. However, because father presumably knew the expected due date of E.B.R.A., he would have had no reason to search newspapers in Colorado Springs for information concerning a possible relinquishment action when the notice was published.
Third, service by publication was effected on father by publication in the Daily Transcript, a newspaper of general circulation in El Paso County where conception occurred, according to Bethany. While service by publication in a newspaper of general circulation is authorized in an expedited relinquishment proceeding, "[n]otice by publication is only proper if a person has not been identified as the other birth parent or possible birth parent or the location of the other birth parent or possible birth parent has not been determined after diligent efforts." § 19-5-103.7(3)(a)(I), C.R.S.2009. According to papers filed by Bethany, it apparently made diligent efforts to inquire of mother as to the identity of the father of E.B.R.A., but was advised that she did not know the identity of the birth father, knew only his first name, and did not know where he worked, where he lived, or any additional information which would lead to his whereabouts. Neither Bethany nor the prospective adoptive parents (intervenors here) assert, and the record does not indicate, that the court itself pursued any efforts to determine whether mother actually knew the father's identity or location.
As the United States Supreme Court has stated, "notice by publication is adequate only where `it is not reasonably possible or practicable to give more adequate warning.'" Jones v. Flowers, 547 U.S. 220, 237, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006) (quoting in part Mullane, 339 U.S. at 317, 70 S.Ct. 652). The Supreme Court has also recognized that "`[c]hance alone' brings a person's attention to `an advertisement in small type inserted in the back pages of a newspaper.'" Id. (quoting in part Mullane, 339 U.S. at 315, 70 S.Ct. 652).
As I noted in my dissent in People in Interest of J.C.S., 169 P.3d 240, 255 (Colo. App.2007) (Taubman, J., dissenting), quoting from the brief of a local department of social services, "the Courts have recognized that service by publication is an indirect and probably a futile means of notification."
Such was the case here. Not only would father have had no reason to search newspapers a month and a half before the expected due date of the child, here, the publication was in the Daily Transcript, which may be a newspaper of general circulation in El Paso County, but which may not be the most widely circulated newspaper there.
Fourth, the record shows that Bethany conceded that "a fraud has been perpetrated by the birth mother ... by failing to disclose the identity of the [father]." Nevertheless, Bethany argued in the district court that the termination of father's parental rights should not be set aside on any basis, including violation of his constitutional rights. Significantly, Bethany does not appear in this appeal to assert again that father's constitutional rights have not been denied notwithstanding the conceded fraud perpetrated by mother, which led Bethany to file the instant relinquishment proceeding that has resulted in the termination of father's parental rights.
Fifth, this dispute concerning father's parental rights has spawned three cases: this relinquishment and termination of parental rights case in Clear Creek County, father's paternity case filed in El Paso County, and an adoption proceeding filed in Arapahoe County. While, according to Bethany, the adoption proceeding has been stayed, the complexity of litigating three cases simultaneously would seem to create barriers for even the most diligent litigant. Under the circumstances here, it appears that father's procedural due process rights have indeed been denied, and further proceedings are clearly warranted to enable him to have his day in court.
NOTES
[1] The record does not indicate whether the district court here made any such inquiry.
[2] We also observe that the fact that publication notice was attempted one and one-half months before the child was born makes it even less likely than usual that publication might reasonably notify a possible parent of the termination proceeding.