In re the Petition of C.L.S.,

and

Lutheran Family Services of Colorado, Inc., Petitioner–Appellee,

In the Interest of E.N.S., a Child,

and

Concerning J.O., Respondent–Appellant,

and

N.M. and J.M., Intervenors–Appellees.

No. 10CA0529.

Colorado Court of Appeals, Div. V.

March 3, 2011.

Myatt Brandes & Gast, PC, Robert W. Brandes, Jr., Fort Collins, Colorado, for Petitioner–Appellee.

J.O., Pro Se.

Wedgle & Kukreja, P.C., Rajesh K. Kukreja, Maricela C. Barbosa, Denver, Colorado, for Intervenors–Appellees.

Opinion by Judge WEBB.

J.O. (father), allegedly the biological father of E.N.S., appeals pro se from the order denying his motion for relief from the judgment terminating his parental rights. The child's mother, C.L.S., voluntarily relinquished custody to petitioner, Lutheran Family Services (LFS), which facilitated the child's adoption by intervenors, N.M. and

J.M. (adoptive parents). The district court terminated father's rights under section 19–5–103.5, C.R.S.2010, which permits a parent who voluntarily relinquishes rights to a child less than one year old to file an expedited petition to relinquish not only that parent's rights but also those of the other parent.

We conclude that because mother knew father's identity, her fraudulent failure to disclose this information to the court resulted in the termination of his parental rights without due process, and therefore the judgment terminating his rights by default is void.[1] We further conclude that the district court erred in determining that the ninety-day limitations period in section 19–5–105(4), C.R.S. 2010, and the six-month limitations period in C.R.C.P. 60(b)(2), left it without discretion to grant father relief from the judgment.[2] Accordingly, we reverse the order denying father's motion, vacate the default judgment terminating his parental rights, and remand the case to the district court for a relinquishment hearing.

### I. Background

The following facts were either undisputed in the parties' filings below or found by the district court, with sufficient record support.

Before the child was born, mother retained the services of LFS to assist her in placing the child for adoption. She represented to the LFS caseworker and later in court documents that the child was the product of a rape committed in Douglas County and that she did not know the father's surname or how to contact him. However, mother sent father emails and text messages that the child had died.

Immediately after the child was born, LFS placed her with adoptive parents. Shortly thereafter, LFS filed a petition for expedited relinquishment in Larimer County, where LFS was located. See § 19–5–102, C.R.S. 2010. LFS gave notice of the relinquishment and termination proceeding to the allegedly unknown father by publication in a newspaper in Douglas County, where mother said

the child had been conceived. See §§ 19–5–103.5(2)(b), 19–5–103.7(3)(a)(I), C.R.S.2010.

The district court granted the petition, finding that LFS had complied with the statutory notice requirements, that father was the only possible birth father, and that, because he had not responded to the published notice within thirty days, he was in default. See §§ 19–5–103(2.5), 19–5–103.5(3)(d)(I)(B), 19–5–104(4), 19–5–105(4), C.R.S.2010. It terminated both parents' rights and granted LFS legal custody and guardianship of the child, with authority to place her for adoption.

The adoption proceedings took place in Jefferson County, where adoptive parents lived. See § 19–5–204, C.R.S.2010. That court entered the final adoption decree on June 23, 2008. The child has remained in adoptive parents' care.

On February 1, 2009, mother sent father a text message telling him that the child was alive and had been adopted. However, she did not provide him with any information concerning the termination proceeding, the adoption proceedings, or the adoptive parents.

In September 2009, father filed a paternity action in Arapahoe County, where mother lived. A magistrate dismissed the case without prejudice, finding lack of jurisdiction to vacate the Larimer County termination order or the Jefferson County adoption decree.

On November 2, 2009, father filed a petition to establish paternity in Larimer County. The court held the paternity case in abeyance pending resolution of father's pro se motion to vacate the termination order, which he filed on December 4, 2009. His admission in these filings created a rebuttable presumption of paternity under section 19–4–105(1)(f), C.R.S.2010.

In that motion, father alleged that he was unaware of the relinquishment and adoption proceedings because he made no inquiries after mother told him the child had died. He

---

1. The portion of the judgment terminating mother's parental rights and those of any "possible birth parent," section 19–5–103.5(2)(d), C.R.S. 2010, other than father, remains valid.

2. In light of these conclusions, we need not consider the parties' additional contentions.

provided documents establishing that contrary to mother's representations to LFS and the court, she knew his identity and whereabouts, and she was in contact with him during the relinquishment proceedings. He asserted that he first learned the child was alive and had been adopted on March 29, 2009, when he accessed a computer and read the text message mother had sent him on February 1, 2009. Although father did not use the term "due process" in his filings or cite C.R.C.P. 60(b), he argued that mother's intentional and fraudulent omission of his name from court documents deprived him of actual notice of the proceedings and an opportunity to contest the termination of his parental rights.

The district court denied father's motion to vacate as time barred, without addressing whether notice by publication violated his due process rights. The court found that regardless of whether father learned that his parental rights had been terminated on February 1, 2009, when mother sent the text message, or on March 29, 2009, when he allegedly read it, his December 4, 2009 motion was filed outside the statutory ninety-day deadline for vacating a relinquishment/termination order and the six-month deadline under C.R.C.P. 60(b)(2) for challenging judgments obtained by fraud. The court also found that even if father's motion had been timely filed, "vacating the termination order, which would effectively vacate the adoption, would likely cause life-long emotional and psychological harm for the child," and was thus not in her best interests.

## II. The Default Judgment Terminating Father's Parental Rights Is Void Because It Violated His Right to Due Process

■ Father first contends the judgment terminating his parental rights must be vacated because mother's fraudulent misrepresentations to LFS and the court deprived him of notice and an opportunity to be heard. We construe this argument to adequately allege that the proceedings violated his constitutional right to due process. *See People v. Bergerud,* 223 P.3d 686, 696–97 (Colo.2010) (pro se allegations "will be broadly construed to ensure [the movant] is not denied review

of important constitutional issues simply for his inability to articulate his concerns within the legal lexicon"). We agree with father and conclude that the judgment terminating his parental rights by default is void.

■ "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Armstrong v. Manzo,* 380 U.S. 545, 550, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965). Thus, "when termination is sought, due process requires that the parent be provided with adequate notice of the termination hearing and an opportunity to protect his or her interests at the hearing itself." *In re J.M.A.,* 240 P.3d 547, 550 (Colo.App.2010).

■ A judgment entered in violation of due process is void. *E.B. Jones Constr. Co. v. City & County of Denver,* 717 P.2d 1009, 1013 (Colo.App.1986). The failure to provide proper notice "may, in appropriate circumstances, constitute a due process violation that requires vacating" the resulting judgment. *First Nat'l Bank v. Fleisher,* 2 P.3d 706, 712 (Colo.2000); *see also Mason–Jares, Ltd. v. Peterson,* 939 P.2d 522, 524 (Colo.App. 1997) (judgment void because service by publication did not satisfy due process where plaintiff discovered defendants' location during publication process). A default judgment is not void for failure to provide notice if "the defaulting party was nonetheless aware that a default judgment was sought against it and that the defaulting party had sufficient opportunity to be heard." *First Nat'l Bank,* 2 P.3d at 714.

Here, the district court found, and neither LFS nor intervenors dispute, that mother intentionally misrepresented to LFS and in court documents that she did not know father's identity and whereabouts to avoid notifying him of the relinquishment proceedings. Neither LFS nor intervenors argued below, nor do they argue on appeal, that father had notice of the relinquishment petition. Thus, these findings and the undisputed facts establish that notice of the proceedings by publication deprived father of an opportunity

to contest the termination of his parental rights.

Accordingly, the judgment terminating father's parental rights by default is void. *See Armstrong,* 380 U.S. at 547, 550, 85 S.Ct. 1187; *In re Haley D.,* 403 Ill.App.3d 370, 342 Ill.Dec. 835, 933 N.E.2d 421, 426–27 (2010) (*appeal allowed* Oct. 29, 2010); *In re Adoption of D.C.,* 887 N.E.2d 950, 957–60 (Ind.Ct. App.2008); *Velasco v. Ayala,* 312 S.W.3d 783, 799–800 (Tex.App.2009).

### III. The District Court Erred by Denying Father's Motion as Time–Barred

Father next contends he filed his motion as expeditiously as possible and the district court erred by concluding it did not have discretion to grant relief from the judgment because the motion was time-barred under section 19–5–105(4) and C.R.C.P. 60(b). Neither LFS nor intervenors raised below, nor do they argue on appeal, any other defenses to father's motion. We conclude that because the judgment is void neither limitations period applies, and thus the district court was required to grant father's motion under C.R.C.P. 60(b)(3).

#### A. The Motion Was Not Time–Barred Under the Statute

■ Section 19–5–105(4) provides that other than by appeal, the only permissible basis for challenging a termination order is "fraud upon the court or fraud upon a party," and such an order cannot be challenged on any basis, including fraud, more than ninety days after the order was entered. However, the statutory limitations period does not bar a challenge to a termination order filed after the limitations period has expired where, as here, a possible parent seeking relief from the order "alleges that he did not receive actual notice of the termination proceeding because the parent relinquishing the child concealed his identity and caused notice to be given by publication rather than by methods more likely to achieve actual notice." *J.M.A.,* 240 P.3d at 550–51; *see also White v. Davis,* 163 Colo. 122, 125, 428 P.2d 909, 910–11 (1967) (because "the requirements of due process of law under both the United States and Colorado Constitutions take precedence over statutory enactments," statutory limitations periods cannot be construed as barring "inquiry into questions raised involving due process"). Thus, the district court erred by denying father's motion to vacate the termination judgment as time-barred under the statute.

#### B. The Motion Was Not Time–Barred Under Rule 60(b) Because the Judgment Is Void

■ C.R.C.P. 55(c) provides that a court may set aside a default judgment "in accordance with Rule 60(b)," which is "intended to balance the conflicting principles that litigation must have finality and that justice must be done." *People in Interest of S.G.,* 91 P.3d 443, 451 (Colo.App.2004).

Here, the district court found that father's motion to vacate the judgment terminating his parental rights sought relief under C.R.C.P. 60(b)(2), which allows a court to set aside a judgment based on allegations of fraud, misrepresentation, or other misconduct of an adverse party, provided the motion is filed within six months after entry of the challenged judgment. However, while father's motion stated grounds for relief under Rule 60(b)(2), it also alleged grounds for relief from a void judgment under Rule 60(b)(3). *See In re Marriage of Seely,* 689 P.2d 1154, 1159 (Colo.App.1984) (establishing grounds for relief under Rule 60(b)(2) does not preclude relief under one of the other clauses).

■ A void judgment is a "complete nullity" and has no legal effect. *De Avila v. Estate of DeHerrera,* 75 P.3d 1144, 1147 (Colo.App.2003). Hence, neither the six-month nor the "reasonable time" deadline applies to a motion under C.R.C.P. 60(b)(3). *See First Nat'l Bank,* 2 P.3d at 712. Instead, such a judgment may be attacked at any time. *Davidson Chevrolet, Inc. v. City & County of Denver,* 138 Colo. 171, 174, 330 P.2d 1116, 1118 (1958); *In re Marriage of Anderson,* 252 P.3d 490, 495 (Colo.App.2010).

The statement in *In re S.O.,* 795 P.2d 254, 255 n. 1 (Colo.1990), that "C.R.C.P. 60(b)(3) (motion to set aside judgment as void) only

requires that the motion be brought within a reasonable time," does not require a contrary conclusion. The statement is dictum. *S.O.* did not acknowledge directly contrary language in *Davidson Chevrolet.* Nor has *S.O.* ever been cited for this proposition.

The decision to grant relief from a valid judgment is generally within the trial court's discretion. *First Nat'l Bank,* 2 P.3d at 714. However, a motion for relief from a default judgment under C.R.C.P. 60(b)(3) "differs markedly from motions under the other clauses" of Rule 60(b) because "[i]f the surrounding circumstances indicate that the defaulting party's due process right was unfairly compromised by lack of notice of the default proceeding, then relief under C.R.C.P. 60(b)(3) is mandatory." *Id.* (internal quotation marks and citations omitted); *see also In re Marriage of Stroud,* 631 P.2d 168, 170 n. 5 (Colo.1981) (when a motion alleges that a judgment is void under C.R.C.P. 60(b)(3), "the trial court has no discretion. The judgment either is void or it isn't and relief must be afforded accordingly."). Because a district court does not have discretion to uphold a void judgment, our review of the order denying father's motion is de novo. *First Nat'l Bank,* 2 P.3d at 714.

The father in *J.M.A.,* like father here, contended that notice of the relinquishment proceedings by publication was inadequate because the child's mother intentionally and fraudulently misled the adoption agency and the court by representing that she did not know his name or whereabouts. Because the district court denied the father relief without holding an evidentiary hearing, the division remanded the case for a hearing to determine whether the proceedings violated his right to due process and, if so, whether he was entitled to relief under Rule 60(b). *J.M.A.,* 240 P.3d at 552.

But here, remand for that purpose is unnecessary because the district court's findings establish that notice by publication violated father's right to due process. Thus, because the judgment is void, the district court was required to grant father's motion.

The same result obtains under the portion of C.R.C.P. 60(b) that provides "[t]his rule does not limit the power of a court: ... (2)

to set aside a judgment for fraud upon the court." A "fraud upon the court" within the meaning of C.R.C.P. 60(b) "interferes with the judicial machinery" by depriving "the person against whom the judgment was rendered of an opportunity to defend the action when he has a meritorious defense." *See Southeastern Colo. Water Conservancy Dist. v. Cache Creek Mining Trust,* 854 P.2d 167, 176 (Colo.1993) (internal quotation omitted).

Where the relevant facts are undisputed, an appellate court may make an independent determination as a matter of law. *See People v. Miranda–Olivas,* 41 P.3d 658, 661 (Colo.2001). Here, the undisputed facts establish such fraud as a matter of law. *See Aoude v. Mobil Oil Corp.,* 892 F.2d 1115, 1118 (1st Cir.1989) ("A 'fraud upon the court' occurs where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense."). Thus, father was also entitled to relief under the "fraud upon the court" provision of Rule 60(b).

Accordingly, we reverse the order denying father's motion, vacate the judgment terminating his parental rights by default, and remand the case to the district court for a contested relinquishment hearing under sections 19–5–103.5(2)(d)(III) and 19–5–105, C.R.S.2010.

Completion of the adoption in this case over a year before father filed his motion to vacate the termination order does not require a different result. *See White,* 163 Colo. at 124–26, 428 P.2d at 909–11 (limitations period for challenging adoption decree should not be construed to bar as untimely a motion to vacate the decree filed several years after the limitations period had expired where the motion alleged that notice by publication was inadequate because the child's stepfather obtained the order permitting notice by publication by fraudulently representing that he and the child's mother did not know where the biological father lived); *accord Arm-*

*strong,* 380 U.S. at 547, 550, 85 S.Ct. 1187 (adoption decree invalid where mother and stepfather failed to notify biological father of pending adoption proceedings despite knowing his "precise whereabouts").[3]

Nor does the district court's finding that vacating the termination judgment would not be in the child's best interest obviate the need for further proceedings. Had father been given proper notice, mother and LFS would have had the burden of responding to whatever defenses he presented, rather than merely establishing that he did not respond to the notice by publication and was therefore in default. *See Armstrong,* 380 U.S. at 551, 85 S.Ct. 1187; *Adoption of Hugh,* 619 N.E.2d at 983 (burden of proof could not be shifted to father seeking to reopen judgment dispensing with consent to adoption where he did not receive proper notice of adoption proceedings).

Further, based on the default, the court made its best interests determination without considering father's fundamental liberty interest in parenting his child. *Compare Stanley v. Illinois,* 405 U.S. 645, 657–58, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) (determination without a hearing that unwed father was unfit based on state law that presumes unwed fathers are unfit to raise their children violated his right to due process; state's interest in caring for dependent or neglected children did not "justify refusing a father a hearing when the issue at stake [was] the dismemberment of his family"), *with People in Interest of A.M.D.,* 648 P.2d 625, 632–35 (Colo.1982) (due process requires the state to provide fundamentally fair procedures in a proceeding for termination of parental rights, but a parent's due process rights are subject to the power of the state to act in the child's best interests).

**IV. Remand Instructions**

On remand, the district court should first ascertain whether LFS or intervenors now dispute father's paternity, although this issue was not raised earlier. If either does so, then father has the burden of establishing paternity, *People in Interest of S.E.G.,* 934 P.2d 920, 922 (Colo.App.1997), and the court should determine paternity under section 19–4–105(1)(f), C.R.S.2010. If the court decides paternity against father, then the court need not proceed further, although father could appeal that ruling to the extent permitted by section 19–4–105(2)(c), C.R.S.2010.

If paternity is resolved in father's favor, then the court shall consider father's defenses to the relinquishment petition and balance his interests against the best interests of the child and the rights of adoptive parents. We express no opinion on how the court should decide relinquishment. *See In re A.T.M.,* 250 P.3d 703, 705 (Colo.App.2010) (noting that relinquishment cases are "particularly difficult" because they require a balancing of the competing interests of the biological parent, the child, and the adoptive parents "who have raised the child during [the] crucial early" period of the child's life).[4]

**V. Conclusion**

The order is reversed, the judgment as to father is vacated, and the case is remanded for further proceedings consistent with this opinion.

Judge GRAHAM and Judge J. JONES concur.

---

**3.** *See also J.G. v. N.D.G.,* 348 Or. 525, 236 P.3d 709, 714 (2010); *Adoption of D.C.,* 887 N.E.2d at 957–60; *Adoption of Hugh,* 35 Mass.App.Ct. 346, 619 N.E.2d 979, 980–82 (1993); *In re Adoption of Knipper,* 30 Ohio App.3d 214, 507 N.E.2d 436, 438 (1986).

**4.** Nor do we express an opinion on resolving the anomaly that would arise if the district court declines to terminate father's parental rights, be-

cause that court has no jurisdiction over the Jefferson County adoption decree. *See* § 19–5–203(1), C.R.S.2010 (identifying circumstances under which a child is available for adoption); *In re Adoption of T.K.J.,* 931 P.2d 488, 491 (Colo. App.1996) (if a child is not available for adoption under the statute, "the effort to adopt must fail, and a trial court has no power to enter a decree of adoption").