**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2552
_____

R.B.;
V.B., individually and as parents and natural guardians of A.B., a minor,
Appellants

v.

WESTMORELAND COUNTY;
WESTMORELAND COUNTY CHILDREN'S BUREAU;
JOHN CERRA;
KAREN GILMORE;
KIMBERLY POPPA, individually, and;
CHRISTINE O'NEAL;
BARRY O'NEAL, SR., individually
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(D.C. Civil No. 11-cv-01519)
District Judge:  Honorable Arthur J. Schwab
_____

Argued: March 20, 2013
_____

Before: FUENTES, CHAGARES and BARRY, Circuit Judges

(Opinion Filed: May 28, 2013)
_____

Alexander H. Lindsay, Esq. (Argued)
Lisa M. Henry, Esq.
The Lindsay Law Firm
110 East Diamond Street

Suite 301
Butler, PA 16001

Counsel for Appellants


Thomas P. Pellis, Esq. (Argued)
Meyer, Darragh, Buckler, Bebenek & Eck
40 North Pennsylvania Avenue
Suite 410
Greensburg, PA 15601-0000

Counsel for Appellees Westmoreland County, et al.


Stanley W. Greenfield, Esq. (Argued)
Greenfield & Kraut
1040 Fifth Avenue
Pittsburgh, PA 15219-0000

Counsel for Appellees Christine O'Neal and Barry O'Neal, Sr.

_____

OPINION
_____


BARRY, Circuit Judge

R.B. and V.B., the father and mother, respectively, of A.B., appeal from the Rule 12(b)(6) dismissal of their 42 U.S.C. § 1983 claim against defendants Westmoreland County, Westmoreland County Children's Bureau ("WCCB"), and WCCB employees John Cerra, Karen Gilmore, and Kimberly Poppa. They also appeal the District Court's refusal to exercise supplemental jurisdiction over state claims asserted against defendants

2

Barry and Christine O'Neal. We will affirm in part, reverse in part, and remand for further proceedings.

I.

As we write primarily for the parties, we forgo a lengthy recitation of the factual and legal background of the case, and provide but a brief summary. On May 9, 2010, A.B., then fifteen years old, ran away from home after R.B. confronted her about his suspicion that she was engaging in an illicit sexual relationship with the O'Neals' son, twenty-year-old Barry O'Neal, Jr. A.B. ran to the home of the O'Neals. Aware that A.B. and Barry Jr. were, in fact, engaging in a sexual relationship, and concerned about potential criminal charges against her son if word of it got out, Mrs. O'Neal concocted a scheme—the filing of a false report of sexual abuse against R.B.— and told A.B. that she needed to tell this story to the police if she was to remain in the O'Neal home. To that end, Mrs. O'Neal took A.B. to the police station and had her falsely report to Officer August that her father had sexually abused her. WCCB opened an investigation.

Ms. Gilmore, a caseworker and screener at WCCB, notified A.B.'s parents that she had been found, and that she was living with the O'Neals. She informed them of A.B.'s allegations of child abuse and that, for the pendency of the investigation, A.B. could either stay with the O'Neals or be placed in foster care at their expense. Given these options, the parents reluctantly agreed to have A.B. stay with the O'Neals. R.B.

3

expressed his concern for A.B.'s safety given his belief that she and Barry Jr. were engaging in an illicit sexual relationship. Gilmore replied that Barry Jr. was not living in the O'Neal home.

The investigation lasted about a month, during the course of which A.B. remained with the O'Neals and contact between A.B. and her parents was prohibited. On or about June 8, 2010, she was returned home. On two occasions following her return, a WCCB-contracted caseworker, Ms. Collins, visited plaintiffs' residence. On the first occasion, A.B. continued to maintain that her father had sexually abused her. On the second, however, she stated that the allegations of sexual abuse against her father had been fabricated, but that while she was living with the O'Neals, she was the victim of rape and repeated sexual assault by Barry Jr. These statements were disclosed to R.B. and V.B., and Barry Jr. was subsequently charged and pled guilty to several sexual offenses including statutory sexual assault. He was sentenced on August 26, 2011.

Plaintiffs filed suit on November 29, 2011, bringing a § 1983 action against all defendants other than the O'Neals for procedural and substantive due process violations, as well as various state claims against all defendants. Following the grant of an earlier motion to dismiss pursuant to Rule 12(b)(6), and the subsequent filing of an amended complaint, all defendants moved to dismiss. On April 30, 2012, the District Court dismissed the § 1983 claim and state claims against the county defendants, and with no remaining federal claims, dismissed the state claims against the O'Neals without

prejudice to plaintiffs' ability to re-file in state court.

Plaintiffs timely appealed.

## II.[1]

An actionable claim for relief under § 1983 requires: (1) a violation of a Constitutional right (2) resulting from a state sanctioned act. 42 U.S.C. § 1983. Here, plaintiffs allege violations of their substantive and procedural due process rights under the Fourteenth Amendment. Specifically, plaintiffs assert that defendants, aside from the O'Neals, substantially and unjustifiably interfered with R.B. and V.B.'s fundamental liberty interest in family integrity, and with A.B.'s interest to be free from government interference and secure in her person.

The District Court determined that A.B.'s placement with the O'Neals was the result of a voluntary separation agreement, i.e., that R.B. and V.B. voluntarily consented to the placement.[2] On that basis, it dismissed plaintiffs' claims because, in its view, the

---

[1] The District Court exercised jurisdiction under 42 U.S.C. § 1983 and 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over a Rule 12(b)(6) dismissal. *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006). Like the District Court, we must decide whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). We will affirm a Rule 12(b)(6) dismissal only if the plaintiff alleges facts, which if established at trial, would still not entitle the plaintiff to relief. *Twombly*, 550 U.S. at 563 n.8. Whether the alleged facts are provable, or whether the plaintiff will ultimately prevail on the merits, is immaterial. *Id*.

[2] The District Court held in its dismissal of the original complaint that A.B.'s placement with the O'Neals was the product of a voluntary agreement, not a coercive ultimatum, because her parents were given the option of having her stay at "a friend's house." (App.

5

absence of state removal and custody meant there was no deprivation of parental rights to support the parents' claims, and, under *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189 (1989), no protected liberty interest against third-party harm (here, the actions of Barry Jr.) to support A.B.'s claim. Thus, the Court's dismissal rested squarely on a critical factual finding—the voluntary and consensual nature of A.B.'s placement with the O'Neals—which simply may not be made by a district court at the Rule 12(b)(6) stage. *See Dixon Ticonderoga Co. v. Estate of O'Connor*, 248 F.3d 151, 166 (3d Cir. 2001); *Anjelino v. New York Times Co.*, 200 F.3d 73, 97 (3d Cir. 1999). Moreover, the Court's finding is unsupported by the allegations of the amended complaint, which, when read in the light most favorable to plaintiffs, as is required on a Rule 12(b)(6) motion, support the opposite conclusion, i.e., that the placement of A.B. was procured not by a voluntary separation agreement, but under circumstances that we have previously characterized as coercive. We explain.

R.B. and V.B. were told that if they did not consent to A.B.'s placement with the O'Neals, she would be placed in foster care at their expense. In *Croft v. Westmoreland County Children and Youth Services*, 103 F.3d 1123 (3d Cir. 1997), a father subject to child abuse allegations faced a similar ultimatum: vacate the family residence or his child would be placed in foster care. There, we "explicitly reject[ed]" the characterization of

---

16). This was a misreading of the complaint, which stated that the parents were told "A.B. could stay at a friend's house, *which was the O'Neal home*." (App. 33) (emphasis added). The amended complaint remedied any possible confusion, but the Court's subsequent

6

the father's decision as "voluntary." *Id.* at 1125 n.1. ("The threat that unless [the father] left his home, the state would take his four-year-old daughter and place her in foster care was blatantly coercive. The attempt to color his decision [as voluntary] is not well taken."). In a later case discussing *Croft*, we went even further, remarking that "[b]y threatening [to place the child in foster care], the social worker *effectively removed the child from the parents' custody*." *Miller v. City of Philadelphia*, 174 F.3d 368, 376 (3d Cir. 1999) (emphasis added).

Thus, we find that the allegations of the amended complaint, taken with our prior statements in *Croft* and *Miller*, support a plausible claim that the County exercised some degree of control over A.B., i.e. that there was something akin to a "constructive" removal. The District Court erred in making a dispositive factual determination to the contrary on a Rule 12(b)(6) motion, at least as to R.B. and V.B.'s procedural due process claim. We turn, then, to a brief discussion of that claim and of the legal sufficiency of plaintiffs' substantive due process claim.

## A. Procedural Due Process Claim

It has long been recognized that parents possess a constitutionally protected liberty interest in the custody, care, and upbringing of their children. *See Lehr v. Robertson,* 463 U.S. 248, 258 (1983). This interest is not absolute, however. *Croft*, 103 F.3d at 1125–26. Rather, it is balanced against the government's compelling interest in the protection of

---

dismissal of the amended complaint merely incorporated its earlier analysis and never took into account the emendation. (App. 5).

minor children, particularly in circumstances where the protection is considered necessary as against the parents themselves. Thus, parental rights may be infringed upon for the purposes of investigating allegations of child abuse. *Id*. ("The right to familial integrity, in other words, does not include a right to remain free from child abuse investigations."). Such infringement, however, must not run afoul of the Due Process Clause of the Fourteenth Amendment.

A plaintiff seeking relief under § 1983 for a violation of procedural due process must demonstrate that "(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown,* 455 F.3d 225, 233–34 (3d Cir. 2006). Due process usually requires at least "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

As discussed above, the District Court dismissed R.B. and V.B.'s procedural due process claim based on its erroneous factual determination that because the separation agreement was voluntary, there was no deprivation and accordingly no process due. Because the amended complaint sufficiently demonstrated the exercise of governmental control over, or intrusion into, plaintiffs' familial relationships, and plaintiffs were

8

afforded no process to challenge that exercise,[3] dismissal, certainly at this juncture, was improper.

## B. Substantive Due Process Claim

A cognizable substantive due process claim requires deprivation of a protected interest by executive action "so ill-conceived or malicious that it shocks the conscience." *Miller,* 174 F.3d at 375 (internal quotation marks omitted); *see Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008). The "exact degree of wrongfulness necessary to reach the 'conscience-shocking' level depends upon the circumstances of a particular case." *Miller*, 174 F.3d at 375. In some contexts, deliberate indifference has been sufficient; in others, gross negligence or arbitrariness, or even intent to cause harm, has been required. *Sanford v. Stiles*, 456 F.3d 298, 306-07 (3d Cir. 2006). Here, regardless of whether deliberate indifference, or something more, was required, we agree with the District Court that the amended complaint failed to allege any "conscience-shocking" behavior sufficient to support a substantive due process claim.[4]

---

[3] Pennsylvania law requires that a post-removal hearing be held within 72 hours. 23 Pa. Cons. Stat. Ann. § 6315(d). Even if what occurred here did not amount to a "removal" for purposes of this procedural safeguard, parents have a procedural due process right to be promptly heard "regardless of whether or not state law independently imposed that obligation" and irrespective of whether the state takes actual physical custody of the child. *B.S. v. Somerset Cnty.*, 704 F.3d 250, 272–73 (3d Cir. 2013).

[4] We also agree with the District Court that plaintiffs' § 1983 action is against Westmoreland County and WCCB, not the individual WCCB employees; dismissal of the duplicative claims against the employees was therefore proper. Plaintiffs claim that the employees "were acting, at all times relevant hereto, in accordance with a well-established [WCCB] custom and/or policy," and at no point allege individual action separate and apart from that performed as agents of WCCB. (App. 73–74).

## III.

We will vacate the order of the District Court as to the procedural due process claim and remand for further proceedings consistent with this opinion. The state claims will be reinstated, providing the District Court the opportunity to reassess the exercise of supplemental jurisdiction in light of the remanded federal claim. We will, in all other respects, affirm the order of the District Court.