**In re BEATTY et al.**

[Cite as *In re Beatty*, 167 Ohio App.3d 730, 2006-Ohio-3698.]

Court of Appeals of Ohio,
Fifth District, Tuscarawas County.

No. 2006AP040022.

Decided July 14, 2006.

Sharon Buckey–Mirhaidari, for appellant mother.

David Haverfield, for appellee Tuscarawas County Job and Family Services.

Karen Dummermuth, for appellee guardian ad litem.

G<small>WIN</small>, Presiding Judge.

{¶ 1} This appeal emanates from the granting of permanent custody of Chawna Beatty to the Tuscarawas County Job and Family Services (TCJFS). The child was the issue of Cara Beatty, mother and appellant, and Harold Lillie, father, who is not appealing the court's decision.

{¶ 2} Neither the mother nor the father appeals the decision granting legal custody of Charles Beatty and Craig Beatty to Kim and Charles Voshall, the children's paternal aunt and uncle.

## STATEMENT OF FACTS AND THE CASE

{¶ 3} A complaint filed in October 2004 alleged that the mother, Cara Beatty, failed to adequately supervise her minor children and, as a result, Craig Beatty had fallen into Little Stillwater Creek and had to be rescued by emergency response personnel. The court found that Craig Beatty was in the creek in chest-deep water, clinging to the bank. The mother arrived at the same time as emergency personnel and stated that the children were supposed to be at the park, one and one-half blocks from the creek.

{¶ 4} Although the court found that Craig was not injured, it found that there was a risk of injury to the child and found all three children neglected.

{¶ 5} The children were placed almost immediately in relative placement with the paternal aunt and uncle, Kim and Charles Voshall. The children, except for Chawna, remained with the Voshalls. The Voshalls requested that Chawna be removed from their home when they blamed her for the death of a family puppy. Chawna had dropped the puppy, and the Voshalls alleged she had deliberately dropped the puppy. Chawna was removed from the Voshalls' home in May 2005 and was thereafter placed in several foster homes. In September 2005, the TCJFS filed a motion for permanent custody of Chawna and requested that legal custody of Charles and Craig be placed with the Voshalls.

{¶ 6} In October 2005, the court ordered a home study for consideration of relative placement for Chawna in the home of Karla and James Striker.

{¶ 7} On December 28, 2005, the court determined that the home of James and Karla Striker was appropriate and ordered that visitation between Chawna and the Strikers was to occur and could include overnights.

{¶ 8} On January 18, 2006, the TCJFS filed a motion to continue the permanent custody hearing because the preplacement visits for Chawna in the home of the Strikers were going well and the agency believed that additional time was needed in order to continue expanded visits in the Strikers' home. The court granted additional time. The legal-custody and permanent-custody hearings

were continued to March 2, 2006. However, on March 2, 2006, the agency stopped all visitations with the Strikers and the hearing was continued to March 9, 2006. On March 9, 2006, the TCJFS proceeded with its request for permanent custody.

{¶ 9} The Strikers were present for the hearing and up until March 2, 2006, believed that Chawna was going to be placed in their legal custody. Even Chawna believed that she was going to be living with the Strikers and had turned in her books at school.

{¶ 10} At the March 9, 2006 hearing, the mother consented to legal custody of Craig and Charles being placed with the Voshalls but objected to Chawna being placed in the permanent custody of the agency.

{¶ 11} At the March 9, 2006 permanent-custody trial, the TCJFS presented the caseworker, Ms. Wanosik, to testify that the agency did not believe it was in the best interests of Chawna to be placed with the Strikers because she did not have much of a prior relationship with the relatives and because Chawna's behavior allegedly escalated at school when the visits began with the Strikers. Further, it was alleged that her homework was not done when she visited the Strikers. The mother, through counsel, attempted to introduce into evidence the daily log between Chawna's schoolteacher and the foster parents, or the Strikers when she stayed with them. The caseworker testified that she was familiar with the log. The log demonstrated that there were problems with homework not getting done long before Chawna ever visited the Strikers. It also demonstrated that on the nights Chawna stayed over with the Strikers, the homework was always completed. The log also demonstrated that although the foster mother reported behavior problems with Chawna at home, the school did not have behavior problems with Chawna. The trial court excluded this log from being introduced into evidence. The trial court also excluded the mother from presenting the testimony of the Strikers at trial. The mother was not requesting that Chawna be placed in her custody but believed it was in Chawna's best interests to be placed in relative placement with the Strikers. The court ruled that in order for the relatives to be considered for placement, a motion had to be filed by the Strikers. The Strikers had not filed a motion with the court. When the agency abruptly terminated the Strikers' visitation with Chawna on March 2, 2006, the Strikers did contact an attorney but could not obtain an attorney on such short notice. Both the mother and the Strikers requested a continuance of the permanent-custody hearing to allow the Strikers an opportunity to obtain counsel, but the court denied the request.

{¶ 12} The mother presented the testimony of Richard McGarry. Richard McGarry is Mr. Striker's uncle. Mr. McGarry testified that he has been employed for 25 years as a school teacher with the Canton City Schools. He

teaches fifth and sixth graders with learning disabilities and behavioral problems. Mr. McGarry testified that he has known Mr. Striker all of his life and Carla Striker for 15 to 16 years. Mr. McGarry further testified that the Strikers are "honest, warm, and wonderful parents." Mr. McGarry described the Strikers' children as "very polite, respectful, and well behaved."

{¶ 13} Upon cross-examination by the guardian ad litem, Mr. McGarry also testified that he believed it in the best interest of Chawna to be placed in the legal custody of the Strikers. Mr. McGarry testified that the Strikers are "one of the closest families he has ever been affiliated with." He also testified that the Strikers are involved intently with their children's schooling and that the Strikers would promptly take care of any of Chawna's special needs.

{¶ 14} Finally, upon redirect examination, Mr. McGarry also testified that the Strikers would provide a very structured environment for Chawna.

{¶ 15} After Mr. McGarry's testimony, the mother attempted to present Mr. and Mrs. Striker as witnesses but was not permitted to do so by the court. Counsel for the mother proffered the testimony of the Strikers.

{¶ 16} The guardian ad litem set forth in her report, filed January 18, 2006, that the Strikers were "good people, but Chawna does not know them and they do not know her." The guardian ad litem also set forth that "Chawna needs stability and commitment and while the Strikers want to be committed to Chawna, they don't know her well enough to make that commitment." The guardian also stated that Chawna had been in "three foster homes and one relative's home."

{¶ 17} The only other reasons given by the guardian for not recommending placement of Chawna with the Strikers was a concern that placing Chawna with the Strikers might create a financial burden to the Strikers and that the Strikers were requesting custody at the "proverbial eleventh hour."

{¶ 18} At the conclusion of the hearing, the trial court granted TCJFS's motion for permanent custody.

{¶ 19} The mother timely filed a notice of appeal raising the following assignments of error:

{¶ 20} "I. The trial court erred in granting permanent custody to Job and Family Services absent clear and convincing evidence that such an award was in the best interests of the child."

{¶ 21} "II. The trial court's refusal to allow mother's witnesses to testify was in violation of mother's constitutional rights as guaranteed by the United States and Ohio Constitutions."

## II

{¶ 22} Because we find our resolution of appellant's second assignment of error dispositive, we shall address that issue first.

{¶ 23} In her second assignment of error, appellant contends that her constitutional rights were violated when the trial court refused to allow her to call James and Carla Striker as witnesses at the permanent custody hearing. We agree.

{¶ 24} The trial court refused to allow appellant to present the Strikers' testimony on the grounds that they had not filed a motion for custody.

{¶ 25} In the case of *In re Allen*, Delaware App. No. 02–CAF–06028, 2002-Ohio-5555, 2002 WL 31312392, this court reviewed a similar situation. In *Allen*, this court found the underlying rationale of R.C. 2151.353 is to afford all parties adequate notice of all potential custodians, *Allen* at 2, citing *In re Moorehead* (1991), 75 Ohio App.3d 711, 600 N.E.2d 778. In *Allen*, we found that because the mother received adequate notice of the purpose of the hearing and was aware of all the potential custodians, the failure of the grandparent to move the court for legal custody was not fatal.

{¶ 26} In the case of *In re Rumschlag*, Stark App. No.2005–CA–0254, 2006-Ohio-1184, 2006 WL 636981, this court noted: "The Revised Code contains two statutes concerning dispositional orders. R.C. 2151.353 governs the original disposition of a child who is adjudicated dependent, neglected or abused. The statute permits the court to award legal custody of a child to either parent or to anyone who, prior to the dispositional hearing, files a motion requesting legal custody. Juv. R. 33(A) governing disposition after adjudication mirrors the statutory language.

{¶ 27} "R.C. 2151.415 governs modification and termination of prior dispositional orders. The statute permits a court, inter alia, to place the child in the legal custody of a relative or other interested individual. The statute on modification of dispositional orders does not require the relative or interested individual to first file a motion for legal custody, nor does Juv. R. 34(G) governing modification of temporary orders.

{¶ 28} "Unless circumstances cause a delay, the court will hold the dispositional hearing no more than ninety days after the complaint was filed. The statute governing original dispositional orders requires the party seeking legal custody to file a motion prior to the dispositional hearing so that all parties have adequate notice the court could grant legal custody to a party. The modification of any temporary orders will normally take place some time after the original orders were made, and the parties should know how the case is evolving. Even so, Juv. R. 33(G) requires the court to ensure all parties have proper notice of any modification hearing." Id. at ¶ 8–10.

{¶ 29} In concluding that the failure of the paternal grandparents to file a motion for custody did not preclude the trial court from awarding them legal custody, the court in *Rumschlag* noted: "Appellant had sufficient notice the paternal grandparents were potential custodians well in advance of the hearing. In fact, JFS had done a home study at the home of the paternal grandparents. Appellee sometimes resided with them. Prior to the dispositional hearing JFS had approved the paternal grandparent's home as a possible placement for Landon, its only concern being the size of the home * * * We find appellant received more than sufficient notice of the issues to be addressed in the dispositional hearing. Under the particular facts and circumstances of this case, we find the trial court did not err in granting legal custody of the child to the paternal grandparents even though they had not filed their own motion requesting legal custody." Id. at ¶ 11–12.

{¶ 30} In the case at bar, the trial court ordered the TCJFS to conduct a home study of the Strikers. The results of the home study were filed with the court on November 21, 2005. On November 29, 2005, the TCJFS filed a motion for a review hearing regarding relative placement. That hearing was scheduled for December 28, 2005. By judgment entry filed December 28, 2005, the trial court held that "the issue of placement be held in abeyance at this time." The court further ordered visitation between the minor female and the Strikers, including overnight visitation as acceptable to TCJFS. The trial court scheduled a hearing on the motion to modify prior disposition for January 19, 2006.

{¶ 31} On January 18, 2006, the TCJFS filed a motion to continue the hearing scheduled for January 19, 2006, noting that "[a]t the present time, the Strikers' home appears to be a viable placement for [the minor female]. However additional time is necessary in order to allow her to continue to have expanded visitation in the home of the Strikers." The trial court granted the motion and rescheduled the hearing to March 2, 2006. By judgment entry filed March 2, 2006, the court, upon its own motion, continued the hearing to March 9, 2006.

{¶ 32} Similarly to the facts in both *Allen* and *Rumschlag,* the parties in the case at bar had sufficient notice that the Strikers were potential custodians well in advance of the hearing on March 9, 2006. The TCJFS had conducted a home study, and the minor began visitation with the Strikers. Prior to the dispositional hearing, the TCJFS had indicated to the trial court that the Strikers' home appeared to be an appropriate placement option. The trial court was fully aware of the Strikers' involvement in the case.

{¶ 33} Under the particular facts and circumstances of this case, we find that the trial court did err in excluding the testimony of the Strikers on the grounds that the trial court could not grant legal custody of the child to them because they had not filed their own motion requesting legal custody.

{¶ 34} In any event, the trial court permitted lengthy testimony during the case-in-chief presented by the TCJFS concerning the appropriateness of the Strikers as a placement alternative. Fundamental fairness as well as due process would require the court to allow the appellant to rebut or to explain the testimony of the TCJFS caseworker concerning the Strikers, and to argue that it would be in the best interest of the child to grant the Strikers legal custody rather than to grant permanent custody to the TCJFS.

{¶ 35} The basic requirements of procedural due process are stated as follows:

{¶ 36} "A fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' *Armstrong v. Manzo* (1965), 380 U.S. 545, 552, 85 S.Ct. 1187, 1191 [14 L.Ed.2d 62]. As the Supreme Court of Ohio has stated in *Williams v. Dollison* (1980), 62 Ohio St.2d 297 [16 O.O.3d 350, 405 N.E.2d 714], '[d]ue process of law implies, in its most comprehensive sense, the right of the person affected to be heard, by testimony or otherwise, and to have the right of controverting, by proof, every material fact which bears on the question of right in the matter involved.' Id. at 299 [16 O.O.3d 350, 405 N.E.2d 714]." *Schoettle v. Bering* (Apr. 22, 1996), Brown App. No. CA95-07-011, 1996 WL 189027.

{¶ 37} Accordingly, appellant's second assignment of error is sustained.

I

{¶ 38} In light of our disposition of appellant's second assignment of error, which will result in a new hearing, we overrule appellant's first assignment of error as premature.

{¶ 39} For the foregoing reasons, the judgment of the Court of Common Pleas, Juvenile Division, of Tuscarawas County, Ohio, is vacated and the cause is remanded to that court for proceedings consistent with this opinion.

Judgment vacated
and cause remanded.

HOFFMAN and FARMER, JJ., concur.