IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
October 7, 2025 Session

**JORDAN HARP v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. 20-00594        Carlyn L. Addison, Judge**
_____

**No. W2025-00162-CCA-R3-PC**
_____

Petitioner, Jordan Harp, appeals the denial of his post-conviction relief petition. Petitioner was indicted by the Shelby County Grand Jury for first degree premeditated murder and especially aggravated kidnapping. Pursuant to a March 2022 negotiated plea agreement, Petitioner pleaded guilty to the lesser offense of second degree murder and to especially aggravated kidnapping and received an effective sentence of forty years.[1] Petitioner timely sought post-conviction relief, alleging several instances of ineffective assistance of counsel and that his guilty pleas were unknowingly and involuntarily entered. After only hearing from Petitioner's trial counsel, the post-conviction court stated, "I don't need to hear anything from [Petitioner]," and denied Petitioner the opportunity to testify and present witnesses. The post-conviction court then denied relief. Because we conclude that Petitioner was not afforded a full and fair hearing on his post-conviction petition, we reverse the judgment of the post-conviction court and remand this case for a new hearing on his post-conviction petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed and Case Remanded**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, P.J., and JOHN W. CAMPBELL, SR., J., joined.

Lance R. Chism (on appeal and at post-conviction hearing), Memphis, Tennessee, for the appellant, Jordan Harp.

_____

[1] Because the record does not include the indictment, the plea agreement, or the judgments, we rely on information contained in the Record of Arrest, the post-conviction petitions, the transcripts of the guilty plea and post-conviction hearings, and the order denying post-conviction relief.

Jonathan Skrmetti, Attorney General and Reporter; G. Kirby May, Assistant Attorney General; Steven J. Mulroy, District Attorney General; and Monica Timmerman, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Guilty Pleas*

A transcript of Petitioner's guilty plea submission hearing was admitted as an exhibit at the post-conviction hearing. The State gave the following factual basis for Petitioner's guilty pleas:

[O]n July 12[,] 2019, at approximately 2:20 a.m.[,] officer with the Memphis Police Department observed a black sedan driving erratically near the intersection of Germantown Parkway and Chimney Rock in Memphis, Tennessee. Officers attempted to stop the vehicle but lost visual of the black sedan as it turned eastbound on Chimney Rock.

Officers began patrolling through the area of Chimney Rock and King's Cross and heard a loud crash. Officers located an abandoned black 2017 Toyota Corolla registered to [Petitioner]. The vehicle had front end damage and was parked in front of 2079 King's Cross Lane. Officers observed a large knife and blood inside the vehicle. Officers observed a pair of pink flip flops covered in blood on the passenger side of the vehicle and a trail of blood that led back to 2063 King's Cross Lane.

There they found a female unresponsive with a large laceration stab wound to her neck. Paramedics made the scene and pronounced the female deceased. The Shelby County Medical Examiner ruled the death to be a criminal homicide. Officers responded to a missing person call at 2024 King's Cross Lane. Officers were advised by Sandra Lockett that her daughter Alicia Lockett was missing. She also advised that Alicia's boyfriend[, Petitioner,] told Alicia's father Darnell that he killed Alicia and he would never see her again.

Officers sent a Bartlett police officer to 4546 Successful Lane and attempted to locate the owner [Petitioner]. Officers did not locate [Petitioner] but they were advised by his brother that [Petitioner] posted a message on Facebook stating he killed somebody and the police were going

- 2 -

to kill him.  Officers located [Petitioner] walking near 2803 Landthorp and took him into custody.  Officers observed blood on his hands and clothing.

[Petitioner] was transported to 170 North Main to the Homicide Office where he waived his Miranda rights and gave a statement. [Petitioner] gave an admission to kidnapping Lockett and stabbing Lockett when she attempted to flag down a police officer.  [Petitioner] was charged and transferred to 201 Poplar.

Thereafter, the trial court informed Petitioner of the offenses to which he was pleading guilty and the agreed upon sentence, and Petitioner stated that he understood the terms of the plea agreement.  The trial court questioned Petitioner about the voluntariness of his pleas, and Petitioner responded, "Yes, sir" when asked if he was pleading guilty of his own free will.  Petitioner acknowledged that he understood the rights he was waiving by entering his guilty pleas.  Petitioner answered, "No, sir" when asked if he had any questions for the court.  The trial court accepted Petitioner's guilty pleas and imposed the sentences.

*Post-Conviction Proceeding*

Petitioner filed a pro se petition for post-conviction relief, in which he alleged that his guilty pleas were not knowingly and voluntarily entered and that he received the ineffective assistance of counsel.  The post-conviction court appointed counsel to represent Petitioner, and appointed counsel subsequently filed an amended post-conviction petition.  The amended petition raised several claims of ineffective counsel, including: 1) failure to file a motion to suppress evidence obtained based on a lack of probable cause for Petitioner's arrest; 2) failure to file a motion to suppress Petitioner's statement to the arresting officer based on the officer's failure to advise of *Miranda* rights; 3) failure to file a motion to suppress Petitioner's statement to the arresting officer as involuntary and obtained by force or coercion; 4) failure to file a motion to suppress Petitioner's statement to investigators based on a failure to give *Miranda* warnings; 5) failure to file a motion to suppress Petitioner's statement to detectives as involuntary and obtained by force or coercion; 6) failure to file a motion to suppress Petitioner's subsequent statement to detectives based on his earlier statement to the arresting officer having been made without *Miranda* warnings; 7) failure to file a motion to suppress Petitioner's statement based on the detectives' failure to honor Petitioner's invocation of his right to remain silent; 8) failure to file a *Ferguson* motion based on the State's failure to preserve a recording of Petitioner's interrogation at the police station; 9) failure to retain an independent psychologist to evaluate Petitioner's mental state at the time of the offense; 10) failure to obtain an independent psychological evaluation of Petitioner's ability to understand *Miranda*; and 11) failure to review the police body camera video.

At the post-conviction hearing, trial counsel testified that he began practicing law in 2008 and that he primarily represented criminal defendants. Trial counsel was retained by Petitioner's family while Petitioner's case was pending in general sessions court. Prior to his representing Petitioner, trial counsel had "probably done over a dozen . . . murder trials at that point." Trial counsel provided Petitioner with discovery and reviewed it with him, and counsel met with Petitioner on multiple occasions and discussed evidentiary issues and defense theories. Trial counsel testified he "probably" received police body cam footage in discovery, but he did not specifically recall.

Trial counsel described the facts of Petitioner's case as "horrible." Petitioner told trial counsel that he went to pick up the victim and "they were going to talk about some things." The victim wanted to break up with Petitioner, and the victim was going to report that Petitioner had raped her. Petitioner admitted that he stabbed the victim. He denied kidnapping her, telling trial counsel that "it was not forceful," but Petitioner admitted that he told the victim to get in his car and that he pushed her towards it. Trial counsel's strategy was to establish that the killing was not premeditated. Petitioner expressed "extreme remorse" about the incident. Trial counsel testified, "if we had to go to trial, we would've been arguing for voluntary manslaughter[.]"

Trial counsel testified that Petitioner's case was "weird." When Petitioner was arrested, police officers were "like [']hey, what's up? What's going on, kind of?['] And [Petitioner] just kind of told them." Petitioner "was very forthcoming with information." In debating whether to "try to suppress [Petitioner's] statement[s]" to police or to "make this statement work with our defense[,]" trial counsel considered Petitioner's other incriminating statements, including text messages to the victim's father, a Facebook post, and jail phone calls to Petitioner's mother. Trial counsel testified, "So we had a situation where there was a lot of admitting what happened and talking about what happened." Trial counsel explained, "even if that statement [to police] got suppressed, there would've been multiple other statements to use against him." Petitioner sent a text to the victim's father at 2:32 a.m., shortly after the incident, in which he said he was not sorry and that he hoped he and the victim could be in hell together. Counsel agreed that Petitioner's text message to the victim's father and his Facebook post indicated that Petitioner was suicidal.

Petitioner's statement to detectives, in which he admitted that he stabbed the victim, was admitted as an exhibit to the post-conviction hearing. Petitioner told police he waited for "a couple of hours" at the victim's house for the victim to arrive and that when she arrived, he took her cell phone and the food she was holding from her and pushed her into the passenger seat of his car. Petitioner told detectives that the reason he stabbed her was because she leaned over to his side of the car and tried to flag down a passing police officer. Petitioner also admitted that he fled the scene after the stabbing. Trial counsel agreed that

- 4 -

"parts of [the statement] were not good," but counsel explained that Petitioner had already made "several other admissions of guilt" and that he "had gaps to fill." Trial counsel viewed the statement to detectives as "helpful" because it showed Defendant's "heightened passion" and "mental state at the time" of the offense. Trial counsel acknowledged that Petitioner's statements to police were more damaging than his Facebook post or his text to the victim's father.

Trial counsel filed a "boilerplate" motion to suppress with several other motions he typically filed at the beginning of a case. There was "nothing specific about [Petitioner's] case in that motion." Counsel testified, "There may be motions that don't even make sense for a case, but I file them any[]way just to be sure."

Trial counsel was aware that the arresting officer did not advise Petitioner of his *Miranda* rights. Counsel could not recall whether the detectives who subsequently interviewed Petitioner advised him of his *Miranda* rights. An Advice of Rights form signed by Petitioner was admitted as an exhibit to the post-conviction hearing. Trial counsel testified that he was aware that Petitioner had been awake all night and that he smoked marijuana the night before. Trial counsel did not consider a challenge to Petitioner's statements as involuntary, explaining, "the fact that he is willing to very freely speak about it indicates that it's not involuntary, that he's actually quite voluntarily speaking about it." Trial counsel recalled that Petitioner told him detectives lied to him about the victim's condition, stating that she was "fine[,]" and trial counsel "explained to [Petitioner] that unfortunately, they are allowed to do that."

Trial counsel could not recall whether Petitioner invoked his right to remain silent during the interrogation with detectives, though trial counsel said it "sound[ed] familiar" that Petitioner told detectives he "d[id]n't want to tell the rest of the story[.]" When asked why he did not challenge Petitioner's arrest for lack of probable cause, trial counsel said, "I had never thought about that. That's not something I considered."

Trial counsel could not recall if the interview with detectives was recorded. He testified, "if [a recording] didn't exist, I wouldn't have filed a *Ferguson* motion." Trial counsel did not believe that suppression of Petitioner's statements would have changed his outlook on the case. He said the "only impact" suppression would have had would be to exclude Petitioner's "side of the story[,]" in which "[Petitioner] says I was scared. I reacted quickly. I didn't mean to do it. It was all so fast. I just stabbed her once. I wasn't trying to kill her." Counsel explained that without Petitioner's statements, "it would have put him in a situation where he might have [had] to testify in order to show that to the jury."

Besides Petitioner's admissions of guilt, other evidence of guilt included blood on his hands and clothing, blood in his vehicle, and the location of the victim's body. Trial

counsel believed the evidence against Petitioner was overwhelming. Counsel believed that if Petitioner's case proceeded to trial, he would have been convicted of first degree murder and received a "substantially" longer sentence.

After trial counsel's testimony concluded, the post-conviction court acknowledged that Petitioner had additional witnesses, but the court stated, "I can't see how they'd be necessary at this point for the Court." The court commented that it did not want to "relitigate something that was never going to be litigated in the first place, which is the motion to suppress, and bringing in those witnesses to testify about what [trial counsel] tells us was plainly and completely trial strategy[.]" The court continued, "I don't know if I need five additional witnesses to determine whether or not this plea was voluntarily and knowingly [entered]. . . ."

Post-conviction counsel recognized that trial counsel made a strategic decision not to seek to suppress Petitioner's statements but noted that trial counsel acknowledged the arresting officer questioned Petitioner without giving him *Miranda* warnings. Post-conviction counsel argued, "in most circumstances advocacy demands an attorney to attempt to suppress any incriminating evidence if arguable grounds exist." Post-conviction counsel argued, "we also have to look at this from a reasonable attorney in that situation, would they have filed a motion to suppress?" He asserted that case law required Petitioner "to show the suppression motion would have been meritorious" and that he could not "show that unless [he] put some proof on."

Post-conviction counsel further asserted that Petitioner "would've gone to trial . . . if that statement was thrown out." Post-conviction counsel explained, "assuming the Court lets us get into all of that, which my position is, we have to get into that to show if the suppression motion would have been successful or not, because what we're saying is that had [trial counsel] filed the motion to suppress, that would have changed the whole outcome of the case. . . ." Post-conviction counsel specifically asked the court for "a chance to put on all the witnesses, Detective Green, Ammans, and Gary Williams, Officer Gary Williams" and to allow the testimony of Petitioner. Post-conviction counsel made a final request that he be allowed "to put [Petitioner] on to give his side of everything[,]" and the court stated, "I don't need to hear anything from your client. [The guilty plea hearing judge] already did."

The post-conviction court found that Petitioner's guilty pleas were entered knowingly and voluntarily, and the court stated, "I see no reason to call the officers in. I see no -- reason to belabor this point." The court accredited trial counsel's testimony and found that "everything that [trial counsel] did was in an effort to strategize and minimize his representation of [Petitioner] and what he could have been looking at, life, plus and not the little bitty 40 he's going to do." The post-conviction court denied relief and

subsequently entered a written order, in which the court found that "trial counsel made a strategic decision not to suppress Petitioner's statements to police but to, instead, use Petitioner's statements to police to his advantage." The court concluded that Petitioner failed to establish that trial counsel was ineffective or that Petitioner's pleas were not knowingly and voluntarily entered.

*Analysis*

Petitioner asserts that the post-conviction court's decision not to hear from Petitioner and other witnesses deprived him of a full and fair post-conviction evidentiary hearing. While the State contends that Petitioner's post-conviction claims are without merit, the State agrees that the post-conviction court abused its discretion by denying Petitioner the opportunity to testify or present additional witnesses at the hearing.

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)); *see also Dotson v. State*, 673 S.W.3d 204, 223 (Tenn. 2023); *House v. State*, 911 S.W.2d 705, 711 (Tenn. 1995). In a post-conviction proceeding, the requirement of a "'full and fair hearing'" is fulfilled when a "'petitioner is given the opportunity to present proof and argument on the petition for post-conviction relief.'" *Brimmer v. State*, 29 S.W.3d 497, 531 (Tenn. Crim. App. 1998) (quoting *House*, 911 S.W.2d at 714); *see also* T.C.A. § 40-30-106(h) ("A full and fair hearing has occurred where the petitioner is afforded the opportunity to call witnesses and otherwise present evidence, regardless of whether the petitioner actually introduced evidence . . . .").

At the post-conviction hearing, the "[p]roof upon the [P]etitioner's claim or claims for relief shall be limited to evidence of the allegations of fact in the petition." T.C.A. § 40-30-110(c). The determination of whether the prospective evidence is relevant is left to the post-conviction court's discretion, which this Court will not overturn without a showing of abuse of discretion. *See State v. Forbes*, 918 S.W.2d 431, 449 (Tenn. Crim. App. 1995)).

We conclude that Petitioner did not receive a full and fair hearing on his post-conviction petition. The post-conviction court abused its discretion in denying Petitioner's request to present evidence. The post-conviction court's refusal to allow testimony from Petitioner and the officers who took his statements impeded Petitioner's attempt to carry the burden of establishing the allegations contained in his petition.

While it is within the court's discretion to determine whether proffered evidence is relevant, here, the post-conviction court refused to allow the testimony without allowing a proffer of evidence and without determining the relevance of the testimony to the issues

raised. Petitioner was denied a full and fair hearing. He is therefore entitled to have the post-conviction court's judgment reversed and to have the matter remanded for a new evidentiary hearing. On remand, the post-conviction court shall allow the parties to present the testimony of all witnesses they desire to call, subject only to the provisions of law that might limit the testimony of a witness. Additionally, if Petitioner wishes to rely on the testimony of trial counsel from the previous hearing, he may do so.

CONCLUSION

The judgment of the post-conviction court is reversed, and this case is remanded for a new evidentiary hearing.

_S/Timothy L. Easter_
TIMOTHY L. EASTER, JUDGE